**Ricky HICKS, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 360, 2005.**

Supreme Court of Delaware.

Submitted: Oct. 25, 2006.
Decided: Dec. 6, 2006.

---

John F. Brady, Esquire, of Brady, Richardson, Beauregard & Chasanov, Georgetown, Delaware; for Appellant.

Kim Ayvazian, Esquire, Deputy Attorney General, Department of Justice, Georgetown, Delaware; for Appellee.

Before STEELE, Chief Justice, BERGER and JACOBS, Justices.

JACOBS, Justice.

■ Ricky Hicks ("Hicks"), the defendant-below, appeals from a Superior Court judgment of conviction following a jury trial. Hicks claims that the Superior Court reversibly erred in three respects, namely: (i) by denying Hicks' motion for a new trial claiming newly discovered evidence; (ii) by excluding evidence of a prior crime committed by the State's trial witness; and (iii) by denying Hicks' request to impeach the State's expert.[1] We conclude that the Superior Court committed no error. Therefore, we affirm.

## FACTS

On October 28, 2004, Delaware State Police Officer Lance Skinner ("Skinner") drove to the Royal Farms convenience store in Milford, Delaware after being alerted about Hicks from a concerned citizen. When Skinner drove into Royal Farms, he saw an orange Honda Accord, which he recognized as Hicks' car, parked in an odd manner in front of the gas pumps. Hicks was standing between the gas pumps and a blue Ford Explorer. When Officer Skinner drove toward both cars, Hicks saw him and asked, "What's up, Skinner?" Hicks then reached into the pocket of his jacket, pulled his hand back, and dropped an object onto the lap of Timothy Davis ("Davis"), the driver of the blue Ford Explorer.

Skinner left his vehicle, approached the Ford Explorer, and asked Hicks what he had thrown into that car. Hicks replied, "nothing." At that point, Skinner observed that Davis' hand was resting on the steering wheel, that the driver's side window was down, and that on Davis' lap was a clear plastic baggie containing an off-white substance that looked like crack cocaine. Skinner told Davis to get out of the Ford Explorer. Appearing shocked, Davis looked down and placed the baggie onto the floor behind him. Davis then stepped out of the Explorer, and Skinner took Davis into custody.

Meanwhile, Hicks got into his orange Honda, which he backed into a parking space in front of the convenience store. Skinner then attempted to place Hicks in custody, and asked a corrections officer

---

1. Hicks also claims that the trial court erroneously recited Hicks' contention that he had received ineffective assistance of counsel. This Court does not entertain claims of ineffective assistance of counsel on direct appeal which were not raised below. *Collins v. State,* 420 A.2d 170, 177 (Del.1980); *Duross v.* *State,* 494 A.2d 1265, 1266, 1267 (Del.1985); *Traylor v. State,* 1993 WL 22021, 1993 LEXIS 18 (Del.1993) (Order). Because this claim was not raised below in a proceeding where counsel had an opportunity to be heard, we do not consider it in this Opinion.

who was passing by to assist him. While Skinner was struggling to place Hicks in handcuffs, he observed a woman leave the Royal Farms store and walk over to the Ford Explorer. Hicks then began yelling at the woman, telling her to get into the Explorer, to ignore Skinner and to leave. Skinner then pushed Hicks aside and ran over to the woman, who was later identified as the owner of the Explorer, Jeanetta Daniels ("Daniels"). Skinner told Daniels to get out of her vehicle and go back into the store. Daniels did as she was told.

Skinner then opened the back door of the Explorer and retrieved a bag of cocaine from the rear passenger side floor. The bag, after being analyzed by a medical examiner, Farnan Daneshgar, was later found to contain about 25 grams of crack cocaine. Skinner also searched Hicks' orange Honda, where he found the torn end of a plastic sandwich bag. Skinner then took Hicks into custody and called for a tow truck to tow the two vehicles to the police station.

After Hicks and Davis were arrested, and while they were seated in Skinner's unmarked police car, Hicks told Skinner that Davis had nothing to do with the drugs. Davis also told Hicks that he (Davis) was not taking any responsibility for any criminal charges, because it was Hicks who had thrown the drugs on his lap. Both Skinner and Officer Dwight Young of the City of Milford Police Department, who also had been called out to the Royal Farms store in the early morning hours of October 29, testified that, while at the scene, Davis told them that the drugs belonged to Hicks.

Thereafter, Skinner contacted Daniels, who identified herself as the owner of the Explorer and told Skinner that she knew nothing about the events at Royal Farms. Daniels told Skinner that she had driven to the gas pump, that Davis was her passenger, and that as she was walking into the store, Hicks pulled up to the gas pump in his orange Honda.

Skinner returned to State Police Troop 4, where he was met by Delaware State Police Corporal John McColgan, who had processed the evidence that Skinner had collected from both vehicles. Searching Hicks' orange Honda a second time, Skinner located a small black plastic baggie containing a small amount of cocaine on the front passenger seat. Hicks later told Skinner that "this is the only thing I know how to do. I don't know anything else but selling. I have no trades or skills."

Hicks and Davis were charged as co-defendants with trafficking in, and delivery of, cocaine, and with other related charges. Davis' charges were later dismissed without prejudice in exchange for giving testimony on behalf of the State. At trial, Hicks took the witness stand and denied having made any incriminating statements to Officers Skinner or Young. Hicks also claimed that three other people—Dennis Hicks, Carlos Daniels, and Dale Davis— had been in the Explorer with Davis, but left before Skinner arrived. Davis testified—contrary to Hicks' testimony—that the drugs all belonged to Hicks and that two bags were thrown into the Explorer, although only one bag was found there.

Daneshgar, the State's expert witness, testified that the baggie collected from Daniels' Ford Explorer contained 25.48 grams of crack cocaine. Frustrated because he had to wait all day to testify, Daneshgar used profane language in front of the prosecutor and the court bailiff. When first questioned about his inappropriate behavior by the trial judge, Daneshgar denied using the "F" word, but later admitted that he had said, "I got to pick up my 'f' ing kids." The Superior Court ordered Daneshgar to apologize to the prosecutor and the court bailiff. Hicks' defense counsel then requested an oppor-

tunity under D.R.E. 609 to impeach Daneshgar by developing the fact that he had initially been untruthful to the trial judge, analogizing his behavior to a finding for contempt.[2] The Superior Court denied defense counsel's request, ruling that Daneshgar had not been found in contempt, and that Daneshgar's initial lack of candor to the Court was a collateral matter.

The jury ultimately convicted Hicks of trafficking in cocaine, delivery of cocaine and possession of drug paraphernalia. Hicks was acquitted, however, of the charges of maintaining a vehicle and resisting arrest. The Superior Court sentenced Hicks to life imprisonment on the charges of which he was convicted.

Hicks appealed from that conviction and sentence. Seven months after the trial, Hicks' defense counsel received a typewritten affidavit bearing Daniels' signature and stamp of a Delaware Notary Public. Daniels' affidavit, in its entirety, read as follows:

I Jeanette Danels [sic], here by state that on the night of October 2004. I was at the Royals [sic] Farms located in Milford Delaware. I was the driver of the Ford [E]xplorer, Timmothy [sic] Davis was my passenger. Officer Skinner seize[d] my truck to search it. When I receive my truck back the weed that Timmothy [sic] was smoking before getting arrest [sic] was still located in my ash tray. Also one of the two bags of crack cocaine that Tim had on him when he arrived at [R]oyals Farms that night was still under the seat. When I received my truck bake [sic] I gave Tim-

mothy [sic] Davis the bag of [c]rack cocaine the same day.

Yours Truly,

Jeanetten Danels [sic]

Hicks moved this Court to remand the case to the Superior Court to present a motion for a new trial, based on newly discovered evidence. This Court granted the application, and Hicks presented his new trial motion to the Superior Court on remand. The Superior Court denied Hicks' motion, holding that: (i) although Daniels' affidavit was newly discovered evidence, the information therein could have been discovered before trial by exercising due diligence; (ii) the new evidence would not have changed the result even if it had been presented to the jury; and (iii) the new evidence was merely impeaching, and not substantive.

### DISCUSSION

Hicks appeals to this Court from his conviction and the Superior Court's denial of his motion for a new trial. This appeal presents three issues which we next address.

### I.

 The first issue is whether the Superior Court erroneously denied Hicks' motion for a new trial. This Court reviews the denial of a motion for new trial for abuse of discretion.[3] To grant a motion for a new trial based on newly discovered evidence, the trial court must conclude that:

---

2. D.R.E. 609(a) provides as follows:
 For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted but only if the crime (1) constituted a felony under the law under which the witness was convicted, and the court determines that the probative value of admitting this evi-

dence outweighs its prejudicial effect or (2) involved dishonesty or false statement, regardless of the punishment.
 D.R.E. 609(a) (2001).

3. *Wolhar v. GMC*, 734 A.2d 161 (Del.1999), citing *Eustice v. Rupert*, 460 A.2d 507 (Del. 1983).

(1) The new evidence is of such a nature that it would have probably changed the result if presented to the jury;

(2) The evidence was newly discovered; i.e., it must have been discovered since trial, and the circumstances must be such as to indicate that it could not have been discovered before trial with due diligence; and

(3) The evidence must not be merely cumulative or impeaching.[4] Hicks claims that by finding that none of these criteria had been satisfied, the Superior Court abused its discretion.

The Superior Court found that Daniels' affidavit would not have changed the result had it been presented to the jury, because "the State has a strong case," and Daniels' affidavit was weak, conclusory and "inconsistent with Daniels' report given to Skinner at the time of the accident." Disputing that finding, Hicks contends that Daniels' affidavit was not conclusory because it recounted specific events surrounding the seizure of Daniels' Ford Explorer and its return to her. Alternatively, Hicks argues, that because the Superior Court did not require Daniels to testify at the new trial hearing, he was deprived of any opportunity to develop further Daniels' affidavit testimony.

We disagree. Daniels' affidavit fails to explain why Hicks initially told Officers Skinner and Young that the cocaine was his. Nor does the affidavit address what contrary testimony Skinner and other State's witnesses had given. Accordingly, Daniels' affidavit does not establish a reasonable probability that her testimony would have altered the outcome of the trial. The credibility of Daniels' affidavit is also doubtful, because the information in the affidavit contradicted Daniels' earlier statement to Skinner at the scene that, during the incident at Royal Farms, she did not know what was going on. Moreover, Daniels had an opportunity to testify at the evidentiary hearing, but declined to appear.

■ Relying on *Charbonneau v. State*,[5] Hicks next claims that the Superior Court erroneously concluded that "the State's proffered version of key facts underlying [Hicks'] conviction is more credible than that of Daniels'." That conclusion was error, Hicks argues, because credibility issues are the province of the jury. Hicks' argument, and his reliance on *Charbonneau*, is misplaced, because on a new trial motion, the trial court has the power to weigh the evidence and pass on its credibility.[6]

Hicks next attacks the Superior Court's determination that the information in Daniels' affidavit could have been discovered before trial with due diligence. The Court so concluded because: (i) Daniels had previously been identified during the trial; (ii) Hicks had the opportunity to question Daniels; and (iii) Daniels had been present throughout the trial, so the information in the affidavit was available through subpoena.

Hicks disputes those findings on three grounds. He argues that (a) the State did not investigate Daniels thoroughly enough to determine whether she had any knowledge of the cocaine found in her vehicle; (b) although Daniels appears on the State's pretrial witness list, there was no indication that Daniels had information that would undermine the evidence offered by the State; and (c) there was no practicable way for Hicks to discover Daniels' information before the trial.

---

**4.** *Lloyd v. State*, 534 A.2d 1262, 1267 (Del. 1987).

**5.** 904 A.2d 295 (Del.2006).

**6.** *Storey v. Camper*, 401 A.2d 458, 461 (Del. 1979), citing *Millman v. Millman*, 359 A.2d 158, 160 (Del.1976).

The threshold, and critical, issue is whether Hicks has shown that Daniels' testimony could not have been discovered before the trial with due diligence. To prevail on that issue, Hicks must prove that he experienced difficulty in discovering Daniels' testimony and that the difficulty could not have been overcome by exercising due diligence. Hicks has shown no basis that would support that conclusion.

The record does not show that Hicks had any difficulty discovering the information contained in Daniels' affidavit. In that respect, this case contrasts sharply with *State v. Washington*,[7] where the Superior Court confronted a motion for a new trial based on newly discovered evidence because the new witnesses were never identified until several months after the trial.[8] Here, in contrast, Daniels had been identified before, and was available throughout, the trial, yet Daniels' affidavit was not submitted until over seven months after trial.

■ Nor has Hicks persuasively shown that he exercised due diligence to uncover the information in Daniels' affidavit. Hicks has not addressed, let alone adequately explained, how his efforts amount to due diligence. In the context of a motion for new trial, due diligence requires that the moving party make some effort to discover the evidence before the trial.[9] Here, Daniels was Davis' friend, was the owner of the Explorer and was present at the scene. Daniels was a key witness, and Hicks knew Daniels. Hicks therefore had the opportunity, and the responsibility, to develop the information and call Daniels to the witness stand. Hicks did not do that.

Lastly, the Superior Court found that the "new" evidence at issue would have served only to impeach the credibility of Skinner's and Davis' testimony. Hicks concedes that "Daniels' testimony would impeach the testimony of Davis and Skinner," but he also claims that Daniels' affidavit would not "merely" impeach but also would have created substantive evidence requiring a new trial. We disagree.

Hicks relies on *State v. Young*,[10] but *Young* is unhelpful to his position. There, the newly discovered evidence consisted of the testimony of the brother (Jullian Cuffee) of a crucial State witness (Miles Cuffee). The court granted a motion for a new trial after finding that Jullian Cuffee "presents himself as a most believable individual with ample opportunity, coupled with a long-standing, trusting relationship with his brother Miles, to have been in a position to have received the information about which he testified."[11] The *Young* court held that Jullian's testimony was far more than "merely" cumulative and impeaching. Here, by way of contrast, Daniels' affidavit was found to be suspect, because (among other things) Daniels failed to testify at the evidentiary hearing. Moreover, the information in Daniels' affidavit would at best have impeached Davis' testimony implicating Hicks, and the testimony of Officers Skinner and Young.[12] That is, Daniels' affidavit provided no new

---

7. 1992 WL 302014, 1992 Del.Super. LEXIS 423 (Del.Super.Oct. 15, 1992).

8. *Id.* at *2–3, 1992 Del.Super. LEXIS at *7.

9. *United States v. Jaramillo*, 42 F.3d 920, 925 (5th Cir.1995).

10. 1982 Del.Super. LEXIS 1062 (Del.Super.Oct. 4, 1982).

11. *Id.* *25–26.

12. Skinner had observed Hicks throw an object onto Davis' lap while he was seated in the Explorer. Officer Young testified that he heard Hicks confess that the cocaine was his.

substantive evidence, but only impeaching evidence.

## II.

 Hicks next claims that the trial court erred by excluding evidence of a prior crime committed by Davis, the State's principal fact witness. This Court reviews a trial court decision to admit (or not to exclude) evidence under D.R.E. 404(a)(2) and 404(b) for abuse of discretion.[13]

Hicks admits that Davis' 1999 narcotics adjudication was not a felony or a crime involving dishonesty. Therefore, Davis' 1999 conviction "... was inadmissible under D.R.E. 609 for the purpose of impeachment and likewise was probably not properly admissible under Rule 608(b)." Hicks claims, however, that the Superior Court "should have considered whether the evidence was relevant under Rule 401." If it was, Hicks asserts, then the Superior Court should have conducted a balancing test under D.R.E. 403.

The record shows, however, that the Superior Court did conduct that balancing test, and that the trial court held that the probative value of Davis' 1999 narcotic adjudication, if any, was substantially outweighed by the danger of confusion and undue delay. Therefore, Hicks' claim of error lacks a factual basis.

Relying on *United States v. Cruz–Garcia*,[14] Hicks next argues that the Superior Court "should have considered whether the evidence concerning Davis' 1999 narcotics possession adjudication was admissi- ble under D.R.E. 404(b)." [15] *Cruz–Garcia* is of no aid to Hicks. In *Cruz–Garcia*, the District Court had excluded evidence that was probative of whether the witness was intelligent and sophisticated enough to act on his own. Reversing the trial court's ruling, the Ninth Circuit held that "the proffered evidence could not be properly excluded under 404(b) because it was probative of a matter other than the witness's propensity to commit crime." [16] Nonetheless, the Ninth Circuit held, even if the evidence is admissible under Rule 404(b), it may be excluded under Rule 403's balancing test.[17]

Hicks' argument lacks substantive merit. Skinner saw a clear plastic baggie containing a large amount of crack cocaine on Davis' lap. Davis was then charged as a co-defendant, and the charges against him were dismissed *without* prejudice at trial in exchange for his testimony. Had Davis' 1999 narcotic adjudication been admitted, that evidence would have been highly prejudicial because it would have invited the jury to infer that Davis had a propensity to commit drug offenses, and that therefore the drugs and paraphernalia found in the Explorer must have been his. That is precisely the kind of inference that Rule 404(b) is intended to preclude. The evidence of the 1999 adjudication would be probative only of Davis' propensity to commit a drug-related crime. Under the D.R.E. 403 balancing test, the concern that the jury would consider that evidence solely as propensity evidence outweighed whatever limited probative value that the

---

**13.** *Pope v. State*, 632 A.2d 73, 78–79 (Del. 1993).

**14.** 344 F.3d 951 (9th Cir.2003).

**15.** D.R.E. 404(b) provides that:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissi- ble for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.
D.R.E. 404(b) (2001).

**16.** *United States v. Cruz–Garcia*, 344 F.3d at 955.

**17.** *Id.* at 956.

evidence might have had. Therefore, the Superior Court committed no error in excluding Davis' 1999 narcotic adjudication.

## III.

▮ Hicks' final claim is that the Superior Court erred by denying his request to show that Daneshgar, the State's expert, had lied to the Court. A trial court's decision to admit or exclude evidence is reviewed by this Court for an abuse of discretion.[18]

Relying on *In re Hillis*,[19] Hicks claims that the Superior Court's order that the State's expert, Daneshgar, apologize to the prosecutor and bailiff constituted an implicit finding and sanction for contempt. Hicks claims that he was entitled to use that "contempt" finding to impeach Daneshgar under D.R.E. 609(a) as a conviction of a prior offense involving a false statement (his lie to the Court).[20] Hicks also urges that the Superior Court's exclusion of this evidence was highly prejudicial, because Daneshgar was the only witness whose testimony established the seized evidence as cocaine. That impeachment evidence, Hicks claims, could have undermined the jury's confidence in Daneshgar's expert opinion.

This argument lacks merit, because there was no adjudication of contempt. In *In re Hillis*, in contrast, an assistant public defender returned to a courtroom a half-hour late from a recess, offered no apology or explanation and became insolent. Although the trial judge disclaimed that he was finding the public defender in contempt for his openly sarcastic and disrespectful attitude, this Court held the trial judge's action disciplining the public defender constituted a summary finding of contempt. This case is distinguishable.

Here, Daneshgar obeyed the Superior Court's instruction and apologized to the prosecutor and the court bailiff for his abusive language. The "contempt power ... [can]not be used to punish a person merely for committing perjury in the court's presence without the additional showing that an actual obstruction of justice was caused thereby."[21] Here, the Superior Court properly found that Daneshgar's false statement to the trial judge on a matter totally unrelated to his testimony did not impair the jury's search for truth, or the order, dignity or authority of the court.

## *CONCLUSION*

For the above reasons, we find that Hicks' conviction was free from error and the Superior Court committed no error in denying Hicks' motion for a new trial. The judgments of the Superior Court are affirmed.

▮

**18.** *Kiser v. State*, 769 A.2d 736, 739 (Del. 2001).

**19.** 858 A.2d 317 (Del.2004).

**20.** D.R.E. 609(a), *supra* note 2.

**21.** *Temple v. United States*, 386 U.S. 961, 87 S.Ct. 1024, 18 L.Ed.2d 110 (1967).