Marquis MASON, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 86, 2008.

Supreme Court of Delaware.

Submitted: Oct. 29, 2008.
Decided: Dec. 22, 2008.
Reargument Denied Jan. 13, 2009.

Jan A.T. van Amerongen, Jr., Esquire,
Wilmington, DE, for Appellant.

Timothy J. Donovan, Jr., Esquire, Department of Justice, Wilmington, DE, for Appellee.

Before STEELE, Chief Justice, BERGER and JACOBS, Justices.

BERGER, Justice:

In this appeal we consider whether the trial court abused its discretion in refusing to redact portions of a police interrogation during which appellant stated that he was being interrogated for a violation of probation. In fact, appellant was a homicide suspect. The trial court decided that appellant's comments were not prejudicial because they made no reference to a crime that led to his being on probation or to conduct that would result in a violation of probation. Alternatively, the trial court concluded that any prejudice was outweighed by the probative value of appellant's comments, which demonstrated his evasiveness and his apparent desire to frustrate the police. We conclude that the trial court abused its discretion, but find that the error was harmless beyond a reasonable doubt. We find no merit to appellant's second claim—that the trial court erred in refusing to give a jury instruction on criminally negligent homicide. Accordingly, we affirm appellant's convictions.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 31, 2006, Marquis Mason shot and killed Parrish Johnson, in a Wilmington parking lot, after a drug deal went bad. Johnson and a friend, Prentiss Butcher, were in the front seat of Johnson's car. Mason, who was there to buy cocaine, got into the back seat. Mason paid Johnson less than the agreed upon amount, and the two started arguing. Johnson got out of the car and pulled Mason out of the back seat. Johnson grabbed Mason, then put his hands in Mason's pockets trying to take back the drugs and Mason's money. According to Mason, while they were scuffling, Johnson asked Butcher to hand him "that," and Butcher bent down to get something from under the driver's seat. Mason saw that it was a gun, so Mason "reacted fast" and shot Johnson twice. After the shooting, Mason ran away.

One week later, the police took Mason into custody and interrogated him. Mason gave almost no direct answers. Instead, he either said that he did not know what the police officer was talking about, or that he knew he had a violation of probation. Whenever Mason said that he was there because of a violation of probation, the police officer corrected Mason and told him that he was being questioned about a murder. At one point, Mason apparently succeeded in irritating the police officer, who said, "If you mention VOP one more time we're walking out of here, right, you're done, do you understand? You're not here for a VOP, you're here for Murder 1st, do you understand that?"[1]

Mason was charged with first degree murder, possession of a firearm during the commission of a felony and possession of a deadly weapon by a person prohibited. After jury selection, the State advised the court that it intended to play the tape of Mason's interrogation. Mason moved to redact those portions of the tape that referred to Mason being on probation or violating probation, but the trial court denied the motion. At trial, Mason testified and claimed that he shot Johnson in self-defense. Mason requested that the trial court instruct the jury on the lesser included offenses of second degree murder, manslaughter and criminally negligent homi-

---

1. Appellant's Appendix, A15.

cide. The trial court denied the request as to criminally negligent homicide, but instructed on the other lesser offenses. The jury found Mason guilty of manslaughter and of the weapons offenses.

### DISCUSSION

 We review a trial court's decision on the admissibility of evidence for abuse of discretion.[2] Generally, relevant evidence is admissible unless "its probative value is substantially outweighed by the danger of unfair prejudice...."[3] Evidence of other crimes is admissible only for very limited purposes. Even for those specified purposes, the evidence must be material to an issue in dispute, and it must be accompanied by a limiting instruction to the jury.[4]

The comments that Mason wanted redacted never identified other crimes. They did, however, provide evidence that Mason had been previously convicted. To avoid answering questions about the murder, Mason acted as if he was being questioned about a violation of probation. The following are a few of the many instances during which Mason tried to deflect the police officer's questions:

> Officer: Now, I don't know how else to explain that. Okay, but you've been identified as the shooter in an incident where a person died.... Now ... there's something else going on for [Mason] to do something like that and I want to know what it is, do you understand?
>
> Mason: Yeah, I understand.
>
> Officer: Okay, well what is it—what is it that was going on that day?

Mason: That's what I'm saying, I understand, but I don't know what you're talking about.

\* \* \*

Officer: Tell us what happened!

Mason: What how I came home and violated?

\* \* \*

Officer: ... Let's not play games here.... We're not talking about a VOP where you'll be out in 90 days; you've hit the big time now!

\* \* \*

Mason: A VOP ain't no big time!

Officer: This is not a VOP?

Mason: Sir, that's the only thing I got....

Officer: I don't how much more I can stress that in front of your mother. This is not a VOP, this is the big time! Okay, this means you go to jail for the rest of your life!

Mason: For a VOP.

Officer: No, for Murder!

Mason: Oh, I ain't going to jail for the rest of my life for no murder![5]

The State objected to Mason's request that the tape be redacted, arguing that: 1) the evidence is relevant because it demonstrates Mason's "disingenuous and evasive answers;" 2) redaction would make large portions of the statement unintelligible; and 3) the evidence is not inflammatory because there is no reference to the underlying crime(s).[6] The trial court accepted the State's position, finding that the references to probation and violation of probation were not prejudicial because there

---

**2.** *Hicks v. State,* 913 A.2d 1189 (Del.2006).

**3.** D.R.E. 403.

**4.** *Getz v. State,* 538 A.2d 726 (Del.1988); D.R.E. 404(b).

**5.** Appellant's Appendix, A 10–11.

**6.** Appellant's Appendix, A 56–57.

was no mention of the underlying crime. The trial court further found that, to the extent that Mason might be prejudiced, the probative value of proving that Mason was disingenuous far outweighed any prejudice.

The record does not support those findings. Mason made no admissions during the interrogation. Instead, he answered questions with his own questions; or claimed not to know anything about the crime or the victim. It is true that Mason was evasive, but his evasiveness and general demeanor could have been established without the portions of the tape in which he referred to violating probation. Moreover, the tape easily could have been redacted without the remaining portions becoming confusing or meaningless. Most of the probation references were one line comments made during the first five pages of a 20 page transcript.[7] Finally, the fact that Mason was on probation or might have violated probation has no probative value. It does not bear upon any element of the crime or in any way help to prove that he killed Johnson. Thus, even if the trial court was correct that the references to probation were not very prejudicial, the balancing test could not possibly weigh in favor of admissibility. Mason's motion to redact the tape should have been granted.

■ Notwithstanding the error in admitting the unredacted tape, this Court may consider *sua sponte* whether the error was harmless.[8] In light of the strength of the State's case, we are satisfied that Mason's references to his having violated probation did not affect the out-come and that the error was harmless beyond a reasonable doubt.

■ Mason also argues that the trial court erred in failing to instruct the jury on criminally negligent homicide. A person is guilty of criminally negligent homicide when he causes the death of another; fails to perceive a risk that his conduct could result in death; and his failure to perceive the risk "constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."[9] Mason is not entitled to a jury instruction on a lesser-included offense "unless there is a rational basis in the evidence for a verdict acquitting [him] of the offense charged and convicting [him] of the included offense."[10] The record offers no basis on which a rational juror could conclude that Mason failed to perceive the risk that he could kill Johnson. He shot Johnson twice, in the abdomen, at close range. Mason testified that he did so because he thought Johnson was about to shoot him. It may not have been Mason's intent to kill Johnson, but there can be no doubt that he intended to shoot Johnson and that he recognized the risk that his conduct would result in Johnson's death. Accordingly, we find no error in the trial court's refusal to give a jury instruction on criminally negligent homicide.

## CONCLUSION

Based on the foregoing, the judgments of conviction are hereby affirmed.

---

7. The complete transcript is 31 pages, but the last 10 pages were not part of the interrogation, and were not presented to the jury.

8. *Hassan-El v. State*, 911 A.2d 385, 398 (Del. 2006).

9. 11 Del. C. §§ 231(d), 631.

10. 11 Del. C. § 206(c).