Erroll HARPER, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 417,2008.

Supreme Court of Delaware.

Submitted: Feb. 25, 2009.
Decided: April 14, 2009.

Court Below: Superior Court of the State of Delaware in and for New Castle County, Cr. I.D. No. 0611017713.

Robert M. Goff, Jr., Esquire, Office of the Public Defender, Wilmington, Delaware; for Appellant.

Paul R. Wallace, Esquire, Department of Justice, Wilmington, Delaware; for Appellee.

Before STEELE, Chief Justice, BERGER and JACOBS, Justices.

JACOBS, Justice.

Erroll Harper, the defendant below, appeals from a Superior Court judgment convicting Harper of multiple counts of various sex-related offenses. On appeal, Harper claims that the Superior Court abused its discretion by permitting the State to cross-examine him about his use of a false name in an unrelated incident. We find no abuse of discretion and affirm.

### FACTS

George Baine is a single father with three young daughters: ten-year old J.S., nine-year old P.R., and four-year old S.E.[1] During December 2004 and January 2005, Harper lived with the Baines, sleeping on their couch. Harper moved back in with the Baines in June 2005. Because Mr. Baine was having difficulty locating a babysitter for his daughters, Harper babysat the girls full-time. Harper stayed with Baine until November of 2005. At that time, the two older Baine girls were friends with two girls of similar age, R.C.

1. The Court, sua sponte, has assigned pseudo-    nyms to the parties under Supr. Ct. R. 7(d).

and R.H., and the four girls would often have sleepovers at the Baine home.

In late November of 2005, the Baines moved to Mississippi, after which R.H. told her mother that Harper had sexually abused her. R.H.'s mother contacted the other girls' parents and notified the police. J.S., P.R., R.C., and R.H. were interviewed at Child Advocacy Centers in Mississippi and Delaware. They all claimed that Harper had molested them.

Before trial, Harper gave notice that he would testify on his own behalf. Harper also moved *in limine* to exclude certain evidence. First, Harper sought to bar the admission of his prior convictions. Second, he sought to bar the introduction of his use of a false name while questioned, in November of 2005, by the police regarding a shoplifting charge that never resulted in a conviction. The trial court ruled that certain of Harper's recent convictions could be used to impeach him, but that the convictions that occurred over ten years before could not be.[2] The trial court also ruled that Harper's use of a false name could be used to impeach him if he testified.

Harper's trial began on April 15, 2007.[3] At trial the four girls testified to Harper's alleged sexual misconduct. After Harper testified on direct, he admitted on cross-examination by the prosecutor that his prior convictions were for crimes of dishonesty. The prosecutor also asked Harper the following questions, to which Harper gave the following answers:

Q: Okay. And your birth name is Erroll Harper?

A: Yes, it is.

Q: Okay. Yes you have used the name Gregory Porter?

A: That is correct.

Q: And that's not your real name?

A: No, it's not.

Q: And you used the name Gregory Porter in November of 2005, correct?

A: Yes, ma'am.

Q: And that would have been during the same time period that the girls alleged all this stuff happened, right? They are alleging these offenses occurred against them between June and November of 2005?

A: Yes.

Q: And you used the name of Gregory Porter in November of '05?

A: Yes, ma'am.

Harper was convicted and sentenced to twenty-two years imprisonment. This appeal followed.

### *ANALYSIS*

■ The Superior Court ruled that the State could impeach Harper by inquiring about his use of a false name:

I am going to let it in, because I anticipate that the defendant will argue that the State's [witnesses] are not credible because they told falsehoods to police officers during the course of the investigation and it simply would not be fair that the defendant wouldn't be subject to the same sort of scrutiny if he takes the stand.

On appeal, Harper claims that the trial court abused its discretion, in violation of

---

2. The convictions that the trial court ruled admissible were: Impersonation of a Civil Servant (Fire Inspector), Attempted Theft by Deception, Theft by Unlawful Taking, and Theft by Receiving Stolen Property.

3. Harper was charged with, *inter alia*, multiple counts of Second Degree Rape, Continuous Sexual Abuse of a Child, Second Degree Unlawful Sexual Contact, Sexual Solicitation of a Child, First Degree Indecent Exposure and Endangering the Welfare of a Child.

D.R.E. 608, by allowing the State to cross-examine him about his use of a false name in a case that was unrelated to the charges against him. The State responds that the trial court properly applied Rule 608 in ruling that the State could cross-examine Harper on his use of a false name.

■ The issue is whether the trial court abused its discretion by allowing the State to cross-examine Harper on his use of a false name. We review a trial court's decision to admit impeachment evidence for abuse of discretion.[4] "An abuse of discretion occurs when a court has exceeded the bounds of reason in view of the circumstances or so ignored recognized rules of law or practice to produce injustice."[5] If we find that the Superior Court abused its discretion, "we then determine whether the error rises to the level of significant prejudice which would act to deny the defendant a fair trial."[6] Because we are reviewing an evidentiary ruling for abuse of discretion, Harper must establish a "clear abuse of discretion" to be entitled to a reversal.[7]

Both Harper and the State agree that D.R.E. 608(b) is the controlling evidentiary rule. Rule 608(b), in relevant part, provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the

discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.[8]

Rule 608(b) governs how and when the "credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation."[9] "As a general [matter], the decision to permit or deny [impeachment by cross-examination under Rule 608(b) ] is committed to the sound discretion of the trial court."[10] There are four factors a trial court should consider when making that determination: (1) whether the testimony of the witness being impeached is crucial; (2) the logical relevance of the specific impeachment evidence to the question at bar; (3) the danger of unfair prejudice, confusion of the issues and undue delay; and (4) whether the evidence is cumulative.[11]

Harper presents a series of disjointed and conclusory arguments to support his claim that the trial court abused its discretion. He argues that: (1) the false name testimony was highly prejudicial and of little probative value; and (2) his use of a false name was unrelated to the rape investigation and too remote in time from that investigation. Harper relies on two

4. *Hicks v. State*, 913 A.2d 1189, 1197 (Del. 2006).

5. *Culp v. State*, 766 A.2d 486, 489 (Del.2001) (internal quotations and citations omitted).

6. *Manna v. State*, 945 A.2d 1149, 1153 (Del. 2008) (internal citations omitted).

7. *Kiser v. State*, 769 A.2d 736, 739 (Del.2001).

8. D.R.E 608(b).

9. *Manna v. State*, 945 A.2d at 1156.

10. *Garden v. Sutton*, 683 A.2d 1041, 1043 (Del.1996) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).

11. *Snowden v. State*, 672 A.2d 1017, 1025 (Del.1996); *Weber v. State*, 457 A.2d 674, 681 (Del.1983).

cases: *Hicks v. State*[12] and *Trump v. State.*[13]

The State argues that under the four *Snowden v. State*[14] factors, the trial judge properly admitted the false name impeachment evidence. First, Harper's testimony was crucial to the case, because aside from the victims, Harper was the only witness to the alleged abuse and his account was totally inconsistent with that of the victims. Second (the State argues) the false name was logically relevant to the issues before the jury, because of the conflict between the girls' testimony and Harper's, the risk the jury would ascribe greater weight to testimony from an adult, and the case law holding that the use of false names is proper subject-matter for cross-examination.[15] Third, the State urges that there was no risk of unfair prejudice, because any prejudice to Harper was outweighed by the probative value of the false name evidence. Finally, the State contends that the false name evidence was not cumulative because the Superior Court had limited the use of several of Harper's prior convictions because of their age. As a result, the false name testimony was some of the only impeachment evidence available to the State.

Although Harper does not fully address the *Snowden* factors, we discuss them for the sake of completeness. The first factor, the importance of the testimony of the witness being impeached, heavily favors the State, because Harper's testimony was crucial to his claim of innocence. The second factor, the logical relevance of the impeachment evidence to the question at bar, slightly favors Harper, because his lie to the police during a prior shoplifting investigation was not directly related to charges of child molestation.

The third factor, the danger of undue prejudice, confusion of the issues and undue delay, weighs strongly in favor of the State. The prosecutor's questions were very brief and did not cause delay or risk confusing the jury about the key issues in this child molestation case. The reference to Harper's use of a false name did prejudice Harper, but he has not demonstrated how that reference caused him substantial prejudice.

The fourth factor, whether the evidence is cumulative, is either neutral or slightly favors Harper. Harper argues that the introduction of certain of his prior crimes renders cumulative any reference to his use of a false name. The State argues that because Harper's testimony was key to his claim of innocence, establishing a pattern of deceit by Harper is probative of his untruthful character. Harper's use of a false name is cumulative of his deceitful character given the prior crimes introduced into evidence (*e.g.*, impersonation and theft). To the extent the false name impeachment was cumulative, however, it could not have resulted in substantial prejudice. Considering all these factors together, two favor both the State and Harper, but those that favor the State merit heavier weight. Even if the factors were weighed equally, Harper has failed to establish a clear abuse of discretion by the trial court.

Harper's other arguments, in reliance on *Hicks* and *Trump*, are without legal merit. Harper argues that: (i) *Hicks* prohibits impeachment on collateral and unrelated

---

12. 913 A.2d 1189 (Del.2006).

13. 753 A.2d 963 (Del.2000).

14. 672 A.2d at 1025.

15. *See, e.g., United States v. Ojeda*, 23 F.3d 1473, 1477 (8th Cir.1994) *People v. Walker*, 83 N.Y.2d 455, 611 N.Y.S.2d 118, 633 N.E.2d 472, 476–77 (1994); *State v. Martinez*, 621 N.W.2d 689, 695–96 (Iowa Ct.App.2000).

matters and (ii) *Trump* requires that impeachment testimony be squarely related to the witness' reputation for character and truthfulness. Those arguments lack merit, because Harper reads the holdings of those cases too broadly, and because both cases are factually and procedurally distinguishable.

In *Hicks*, a witness who was frustrated by having to wait an entire day to testify, used profane language before the prosecutor and bailiff.[16] When questioned about his inappropriate behavior, the witness lied to the trial judge.[17] The witness later admitted his lie and apologized.[18] Analogizing the witness' lie to a finding of contempt, the defendant sought to use that lie to impeach the witness' testimony under D.R.E 609(a), arguing that it was like a conviction of a prior offense involving a false statement.[19] The trial court rejected that argument, because there was no finding of contempt and because the witness' lack of candor was collateral.[20] *Hicks* is also distinguishable because it turned on Rule 609(a), not than 608(b). Rule 609 requires a prior conviction. Because there was no conviction in *Hicks*, the trial court properly refused to permit introduction of the witness' lie under Rule 609. Harper also overstates the *Hicks* holding. Aside from a conclusory statement that *Hicks* is controlling, Harper presents no argument

articulating, or otherwise establishing, any substantive abuse of discretion.[21]

Harper has offered no compelling argument that the Superior Court committed an abuse of discretion, let alone a clear abuse of discretion, in making this evidentiary ruling.

### *CONCLUSION*

For the reasons stated above, the judgment of the Superior Court is affirmed.

---

16. *Hicks*, 913 A.2d at 1192.

17. *Id.*

18. *Id.*

19. *Id.* at 1193.

20. *Id.*

21. *Trump* is also distinguishable. In *Trump*, we upheld a Superior Court ruling that a defendant who lied in Family Court could be cross-examined about that lie. In *Trump*, the defendant claimed, in an unrelated Family Court proceeding, that he was the father of his girlfriend's child. In fact he was not, but had lied because he wanted to adopt that child. Affirming the trial court, we held that even though the defendant did not consider himself to be lying (because he was seeking to accomplish a good purpose), the lie squarely related to his "character for truthfulness." *Trump* is procedurally and substantively distinguishable. In *Trump* we ruled only that the admission of impeachment evidence was not an abuse of discretion, but nowhere suggested that the Superior Court would have abused its discretion by admitting impeachment evidence had the witness lacked Trump's idiosyncratic view of lying. *Trump v. State*, 753 A.2d 963, 973 (Del.2000).