IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MICHAEL E. DEMBY, | § | |
| | § | No. 70, 2016 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: |
| | § | |
| v. | § | Superior Court of the |
| | § | State of Delaware |
| STATE OF DELAWARE, | § | |
| | § | Cr. I.D. No. 1206011513 |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: September 21, 2016
Decided: September 29, 2016

Before **STRINE**, Chief Justice, **HOLLAND** and **VALIHURA**, Justices.

## O R D E R

This 29th day of September 2016, upon consideration of the parties' briefs and the record below, it appears to the Court that:

(1)     Michael E. Demby ("Demby") filed this appeal from the Superior Court's April 7, 2015 Letter Order[1] denying his Motion for a New Trial pursuant to Superior Court Criminal Rule 33 ("the Motion").[2]  In his Motion, Demby argued that he was entitled to a new trial based on newly discovered evidence relating to the possible tampering by individuals at the Office of the Chief Medical Examiner ("OCME") with physical evidence used in the prosecution of a third party.  The Superior Court denied the Motion, noting that such evidence would be inadmissible as to Demby.

---

[1] Letter Order, *State v. Demby*, No. 1206011513 (Del. Super. Apr. 7, 2015) [hereinafter "Letter Order at A__"], *available at* A78-79.
[2] Def.'s Mot. for New Trial, *State v. Demby*, C.A. No. 1206011513 (Del. Super. Feb. 9, 2015) [hereinafter "Mot. at A__"].

(2) On October 9, 2013, a Superior Court jury convicted Demby of Drug Dealing, Conspiracy in the Second Degree, Aggravated Possession, and Possession of Drug Paraphernalia. At Demby's trial, the State did not introduce any physical drug evidence or testimony concerning the chemical composition of the drugs involved. Instead, Demby's conviction was based primarily on evidence procured via wiretap.[3] The charges stemmed from a Delaware State Police ("DSP") investigation, using wiretapping, of Demby's associate, Galen Brooks ("Brooks"). On May 26, 2012, the police overheard Brooks and Demby discussing an impending drug deal. Police established surveillance based on this information. Brooks later instructed Demby to prepare and deliver a package of cocaine to Dashawn Ayers ("Ayers"), who would be waiting in a store parking lot in a Dodge Caravan. Brooks was instructed to collect $2,400 from Ayers.

(3) During the DSP's surveillance, officers observed Demby follow Brooks's instructions by placing a package in a vehicle, driving to the designated parking lot, and meeting with Ayers in the Dodge Caravan. When Demby and Ayers separately left the parking lot, the DSP stopped Ayers in the Dodge Caravan. After producing his license, Ayers drove away when the DSP officer instructed him to exit the vehicle. For public safety reasons, the officer did not pursue Ayers and thus did not recover any drugs from the vehicle. The DSP subsequently monitored Brooks's phone conversations and overheard Demby inform Brooks that the transaction had gone as planned. Brooks

---

[3] On direct appeal, this Court affirmed the Superior Court's decision to admit wiretap evidence on July 21, 2014. *See Ayers v. State*, 97 A.3d 1037, 1039-41 (Del. 2014).

instructed Demby to deliver $2,300 to Brooks's mother. Police then overheard Brooks's mother confirm that she received $2,300 from Demby when she called Brooks a few minutes later. Demby was arrested on June 14, 2012.

(4) In the unrelated prosecution of a third party, Jermaine Dollard ("Dollard"), the State disclosed that one of the individuals in the chain of custody for evidence used at Dollard's trial was suspected of misconduct at the OCME. The Superior Court ordered retesting of the evidence, which revealed that it was not an illegal substance, and the State filed a *nolle prosequi* of the charges against Dollard.

(5) On February 5, 2015, Demby's counsel filed the Motion after learning of this "new evidence" in Dollard's case (the "Dollard Evidence"). In his Motion, Demby claimed that the Dollard Evidence raised questions about the State's ability to meet its burden of proof against Demby.[4] He also asserted violations under *Brady* and the Sixth Amendment. After receiving confirmation that no physical evidence or OCME testimony was introduced at Demby's trial, the Superior Court denied the Motion, noting that the Dollard Evidence "would not be admissible in [Demby's] case" and therefore "would not probably change the result if a new trial was granted."[5] The Superior Court did not address Demby's *Brady* claim.

(6) "This Court reviews the denial of a motion for new trial for abuse of

---

[4] Mot. at A68-69. Demby's claim was based on his assertion that "Dollard allegedly distributed crack cocaine and cocaine to area drug dealers[,] including both Galen Brooks and Michael Demby." Mot. at A63. Demby also alleged that "Demby and Dollard received their drugs from the same source[.]" Mot. at A69. However, Demby points to no specific evidence that the cocaine Brooks told Demby to deliver to Ayers on May 26, 2012 was supplied by Dollard.

[5] Letter Order at A79.

discretion."[6]  "An abuse of discretion occurs when a court has exceeded the bounds of reason in light of the circumstances, or so ignored recognized rules of law or practice so as to produce injustice."[7]  Claims of constitutional violations are reviewed *de novo*.[8]

(7)    Rule 33 permits the Superior Court, on a defendant's motion, to "grant a new trial to that defendant if required in the interest of justice."[9]  "A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment[.]"[10]  To grant a motion for a new trial based on newly discovered evidence, the trial court must determine that three requirements are met:

> (1) The new evidence is of such a nature that it would have probably changed the result if presented to the jury; (2) The evidence was newly discovered; *i.e.*, it must have been discovered since trial, and the circumstances must be such as to indicate that it could not have been discovered before trial with due diligence; and (3) The evidence must not be merely cumulative or impeaching.[11]

(8)    Demby has not demonstrated that the Dollard Evidence would probably change the outcome of his trial.  Demby's conviction was supported by testimony of the police officers who performed surveillance as well as the wiretap evidence.  Significantly, the evidence against Demby did not include any physical drug evidence that might be called into question by developments at the OCME.  There was also no

---

[6] *Hicks v. State*, 913 A.2d 1189, 1193 (Del. 2006) (citing *Wolhar v. Gen. Motors Corp.*, 1999 WL 485435, at *1 (Del. 1999)).
[7] *McNair v. State*, 990 A.2d 398, 401 (Del. 2010) (citing *Lilly v. State*, 649 A.2d 1055, 1059 (Del. 1994)).
[8] *Zebroski v. State*, 12 A.3d 1115, 1119 (Del. 2010).
[9] Del. Super. Ct. R. 33.
[10] *Id.*
[11] *Hicks*, 913 A.2d at 1193-94 (quoting *Lloyd v. State*, 534 A.2d 1262, 1267 (Del. 1987)).

4

testimony from any OCME employee that might be impeached by any mishandling that might have occurred there. Considering the specific facts of Demby's case, we find no abuse of discretion in the Superior Court's denial of Demby's Motion.

(9) Demby claims that the Dollard Evidence constituted *Brady* material that the State suppressed by not disclosing it to him. "[A] *Brady* violation occurs where there is 'suppression by the prosecution of evidence favorable to an accused . . . [that] violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'"[12] To establish a *Brady* violation, the defendant must show that: "(1) evidence exists that is favorable to the accused, because it is either exculpatory or impeaching; (2) that evidence is suppressed by the State; and (3) its suppression prejudices the defendant."[13] The third component concerns materiality and is met where "the State's evidence creates 'a *reasonable probability* that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"[14]

(10) Given the fact that the Dollard Evidence did not exist at the time of Demby's trial in 2013, *Brady* is not the proper framework here.[15] Even if it were, the

---

[12] *Wright v. State*, 91 A.3d 972, 987 (Del. 2014) (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)) (alterations in original).

[13] *Id.* at 988 (quoting *Starling v. State*, 882 A.2d 747, 756 (Del. 2005)) (emphasis in original) (internal quotation marks omitted); *see Brokenbrough v. State*, 1987 WL 1866, at *1 (Del. 1987) (citing *United States v. Bagley*, 473 U.S. 667 (1985)) (stating that the defendant has the burden under *Brady*).

[14] *Wright*, 91 A.3d at 987 (quoting *Starling*, 882 A.2d at 756) (emphasis in original).

[15] In *Hickman v. State*, this Court affirmed the Superior Court's finding that there was no *Brady* violation where the State did not disclose misconduct at the OCME that came to light over ten years after the defendant's trial. *Hickman v. State*, 2015 WL 4066797, at *2 (Del. July 1, 2015) (citing *Starling*, 882 A.2d at 756) ("The alleged misconduct by OCME employees was not

5

Dollard Evidence does not constitute *Brady* material in Demby's case. Demby has not sufficiently demonstrated a link between the Dollard Evidence and his case. On this record, there is no reasonable probability that the Dollard Evidence, were it introduced in a new trial, would have any impact on the outcome. Accordingly, Demby's *Brady* claim is without merit.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court be, and the same hereby is, AFFIRMED.

BY THE COURT:

/s/ *Karen L. Valihura*
Justice

---

revealed until 2014, and thus did not raise a concern that the State concealed material impeachment evidence, as required to find a *Brady* violation, at [the defendant's] trial in 2001."); *see also Cannon v. State*, 127 A.3d 1164, 1168-69 (Del. 2015) (citing *Hickman*, 2015 WL 4066797, at *2) (citation omitted) ("We have previously held that because the wrongdoing at the OCME was not known until 2014, incidents not falling within the relevant time period fail to qualify as *Brady* violations.").