# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE, )
)
Plaintiff, )
)
)
)
v. ) Cr. ID. No. 9808000280A
)
)
DAMONE E. FLOWERS, )
)
Defendant. )

Submitted: November 6, 2017
Decided: November 30, 2017

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE SUMMARILY DISMISSED AND THE MOTION FOR APPOINTMENT OF COUNSEL SHOULD BE DENIED

Andrew Vella, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State of Delaware.

Damone Flowers, Sussex Correctional Institution, *pro se*

**MAYER,** Commissioner

This 30th day of November, 2017, upon consideration of Defendant's Motion for Postconviction Relief, Motion for Appointment of Counsel and the record in this matter, the following is my Report and Recommendation.

## BACKGROUND, FACTS AND PROCEDURAL HISTORY

Damone Flowers ("Defendant") has had a lengthy history with the state and federal courts. Although he prevailed upon the Superior Court to grant him relief from his conviction, that win was short lived and soon thereafter vacated. Defendant's history dates back to October of 2002 when he was convicted of Murder in the First Degree and Possession of a Firearm during the Commission of a Felony.[1] Defendant was sentenced to life in prison, plus ten years.[2] The conviction was subsequently affirmed on appeal.[3] After a series of deficient filings,[4] Defendant's first Motion for Post-Conviction Relief was denied on June 27, 2005 (the "First Motion").[5] Defendant almost immediately thereafter filed a second Motion for

---

[1] D.I. # 77.

[2] D.I. # 90.

[3] D.I. # 101. On September 16, 2004, the Delaware Supreme Court issued the mandate affirming the conviction of the Superior Court.

[4] I am not accounting for the non-compliant filings in determining the number of post-conviction relief motions filed by Defendant to date.

[5] D.I. # 106. The First Motion was denied without prejudice to allow Defendant to amend his filing.

1

Postconviction Relief that was also denied (the "Second Motion").[6] Defendant then pursued an appeal that was dismissed as untimely.[7] Moving to the federal arena, Defendant also sought relief by way of a Petition for Writ of Habeas Corpus (the "First Writ") that was denied on September 22, 2008.[8]

On May 12, 2010, Defendant filed a Motion to Compel Production of Brady Material with this Court.[9] As the motion did not relate to any pending matter, it was denied.[10] Defendant then filed his third Motion for Post-Conviction Relief on May 14, 2012 (the "Third Motion").[11] Defendant retained counsel to assist him and the Court considered five claims of ineffective assistance of trial counsel. To allow Defendant a full and fair opportunity to raise any possible claims, the Court issued a letter order that provided for the filing of an amended motion but noted that "[a]ny amended motion must be all-inclusive. In other words, it must state all grounds for relief upon which movant relies."[12]

---

[6] D.I. # 110.

[7] D.I. # 112.

[8] *Flowers v. Phelps*, 2008 WL 4377704 (D. Del. Sept. 22, 2008).

[9] D.I. # 115.

[10] D.I. # 117.

[11] D.I. # 119.

[12] D.I. # 126.

2

The amended and superseding Third Motion was filed on April 25, 2013,[13] the record was enlarged and briefing was submitted. While the Third Motion was pending, Defendant's counsel filed a Motion to Compel and the Court ordered the production of certain tape-recorded statements of two witnesses.[14] The Superior Court Commissioner tasked with reviewing the Third Motion eventually issued a Report and Recommendation (the "Report") that Defendant's Third Motion should be granted in part and denied in part.[15] Objections and additional briefing followed and the Superior Court Judge, specially assigned to the matter, issued a decision adopting in part and denying in part the Report (the "Judgment").[16] Upon appeal to the Delaware Supreme Court, the Judgment was reversed[17] with the Mandate issuing on November 14, 2016.[18] On remand, the Superior Court vacated the Judgment, denied Defendant's Third Motion, reinstated Defendant's conviction and issued a

---

[13] D.I. # 130.

[14] D.I. #s 136, 137, 141.

[15] D.I. # 151.

[16] D.I. # 156.

[17] D.I. # 163.

[18] *Id.*

new sentencing order.[19] Undeterred, Defendant challenged the ruling by way of a second Petition for Writ of Habeas Corpus. According to Defendant's papers, that petition is still pending.

Defendant has now filed his Fourth Motion for Postconviction Relief (the "Fourth Motion") along with a Motion for Appointment of Counsel.[20] Defendant's Fourth Motion raises four claims that the State committed a *Brady*[21] violation and a fifth claim that due to the cumulative nature of the violations, he is entitled to relief.

Defendant's arguments can be summarized as follows:

(1) The State committed a Brady violation by withholding exculpatory taped statements (the Mayo, Bazemore, Duncan, Bartley and Swanson tapes) that are now lost. This was uncovered by post-conviction counsel through his investigation in preparation for the Third Motion. Defendant refers to these claims as having been previously raised as "Ground Nine in First 61 Motion", "Ground Eleven", and "Ground One & Three in First 61 Motion".[22]

(2) The State committed a Brady violation by failing to alert trial counsel of certain statements (the Bartley statement). Again, post-conviction counsel uncovered this through the retention of an investigator.

(3) The State committed a Brady violation when it misled the Court and trial counsel regarding the statements of a witness (the Mayo statements). Once

---

[19] D.I. #s 164, 165.

[20] D.I. #s 168, 169.

[21] *Brady v. Maryland*, 373 U.S. 83 (1963) (hereinafter "*Brady*").

[22] It appears that Defendant's references to his "First" Rule 61 Motion may actually be a reference to his Second Motion.

4

more, this was addressed by post-conviction counsel and part of the Commissioner's ruling on the Third Motion.

(4) The State committed a Brady violation (or prosecutorial misconduct) by not disclosing a deal it reached with one of the witnesses (the Swanson deal). Defendant recognizes that one of his previous motions put the State on notice of this claim.

(5) Defendant's "cumulative result" argument rests on the preceding claims and in support Defendant states "[i]n one form or fashion the movant has attempted to bring Brady violation allegations before the State court." Defendant further admits that he was not able to retrieve the exculpatory *Brady* tapes until the proceedings for the Third Motion.

For the reasons that follow, I recommend that Defendant's Fourth Motion should be summarily dismissed.

## DEFENDANT'S FOURTH MOTION FOR POSTCONVICTION RELIEF

Before considering the merits of the claims, the Court must first determine whether there are any procedural bars to the motion.[23] If a defendant files a direct appeal, then the judgment of conviction is final when the Supreme Court issues a mandate or order finally determining the case on *direct* review.[24] In this case, despite the Supreme Court's Mandate and new sentencing in 2016, Defendant's Fourth Motion is untimely for having been filed more than twelve (12) years after his direct appeal was finally determined and is therefore barred by Superior Court Criminal Rule 61(i)(1).

---

[23] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

[24] Super. Ct. Crim. R. 61(m)(2).

Defendant's Fourth Motion faces several additional procedural hurdles that bar the motion. Therefore, it is my recommendation that the Fourth Motion should be summarily dismissed and that further briefing on this matter would not assist the Court.[25] First, subsequent postconviction motions shall be summarily dismissed, unless the movant was convicted after a trial and the motion meets certain criteria.[26] This is Defendant's fourth motion under Rule 61, and he has not met the exceptions to the bar.

Second, pursuant to Superior Court Criminal Rule 61(i)(3) and (4), any ground for relief that was not previously raised is deemed waived, and any claims that were formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, are thereafter barred. Defendant admits throughout his Fourth Motion that the arguments he presents now, were either available to him and his counsel when the Third Motion was before the Court, or in fact litigated in his earlier filings. As such, a plain reading of Defendant's Fourth Motion, as well as a review of the record in this matter, supports dismissal.

---

[25]  *See* Super. Ct. Crim. R. 61(d)(5).

[26]  *See* Super. Ct. Crim. R. 61(i)(2)(i), and (d)(2).

On May 12, 2010, Defendant filed a Motion to Compel Production of *Brady* Materials requesting the production of two taped statements. On May 8, 2012, Defendant filed a Motion for Expansion of Record through which he sought the Court's assistance to transcribe portions of purported exculpatory statements of witnesses Wright, Mayo and Swanson.[27] Likewise, in his Second Motion, Defendant argued eleven claims including: (i) the State extended deals and/or reduced pleas to State witnesses in exchange for damaging statements; and (ii) *Brady* violation, State attorneys withheld exculpatory, out of court taped statements of five eyewitnesses after general and specific requests. In Defendant's Motion for Appointment of Counsel, filed contemporaneously with the Fourth Motion, he admits that "the first four arguments/grounds/allegations relate back to the first Rule 61 motion filed in September 2005."[28] These claims were also raised in Defendant's First Writ as Count 9.

In October of 2013, Defendant's post-conviction counsel once again moved to compel the State to provide copies of taped statements of witnesses Duncan and Swanson because they contained potentially exculpatory evidence. Defendant's Third Motion then argued trial counsel was ineffective for failing to uncover and present the exculpatory evidence of witnesses Bazemore, Bartley, Mayo, Duncan

---

[27] D.I. # 120.

[28] D.I. # 169.

and Swanson. The Superior Court denied this claim and it was not appealed. Therefore, the existence of the possible exculpatory statements, tapes, or witness information was available to Defendant as early as 2010 and certainly when the Third Motion was briefed and argued to the Superior Court and later before the Delaware Supreme Court. Thus, Defendant does not deny that the issues raised in the Fourth Motion have been previously adjudicated and/or were available to him to pursue through the Third Motion and are now waived.

In order to avoid the procedural bars set forth above, Defendant must assert a claim that (i) the court lacked jurisdiction, (ii) pleads with particularity that new evidence exists creating a strong inference that the movant is actually innocent in fact of the acts underlying the conviction, or (iii) a new rule of constitutional law, made retroactive to cases on collateral review, applies to render the conviction invalid.[29]

Acknowledging that his claims may be procedurally barred, Defendant argues "[i]t is well settled state and federal law however that where there has been a *Brady* violation it overcomes all procedural bars." However, Defendant's argument ends there. He cites no legal authority in support of this position. In fact, Defendant does not argue the Court lacked jurisdiction, nor has he asserted that a new rule of

---

[29] *See* Super. Ct. Crim. R. 61(i)(5) and (d)(2)(i)-(ii).

8

constitutional law affects his conviction. To the extent Defendant's assertion of *Brady* claims was intended to overcome the bar, he appears to be confused. A movant must cite a ***new*** rule of constitutional law that applies retroactively to his case, not an old law that he now feels applies. Neither of these exceptions provide him relief.

The final exception allows a movant to avoid the procedural bars if he pleads the existence of ***new*** evidence or facts demonstrating that he is in fact innocent of the acts giving rise to the conviction. Defendant is required to plead with particularity that there is new evidence demonstrating a strong inference that he is actually innocent of the charges.[30] Defendant must establish "(1) that the evidence is such as will probably change the result if a new trial is granted; (2) that it has been discovered since the trial and could not have been discovered before by the exercise of due diligence; and (3) that it is not merely cumulative or impeaching."[31] The

---

[30] *See State v. Phlipot*, 2017 WL 2266836, at *3 (Del. Super. May 24, 2017) (denying successive motion when defendant failed to present "new evidence" that was unavailable at trial or through the exercise of reasonable diligence at the time of the trial could not be available), citing *Phlipot v. Johnson*, 2015 WL 1906127 (D.Del. Apr. 27, 2015) (requiring a showing that in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.)

[31] *Downes v. State*, 1999 WL 743629, at *7 (Del. Super. Aug. 12, 1999), citing *Hicks v. State*, 913 A.2d 1189, 1194 (Del. 2006). *See also Downes v. State*, 771 A.2d 289 (Del. 2001) (applying standard in context of postconviction relief).

Report though found that trial counsel was not ineffective for failing to call Bazemore, Bartley, Duncan, Swanson and Mayo as witnesses. In its analysis, the Court observed that Bazemore (a minor) could not identify anyone, let alone exculpate Defendant; Bartley's late testimony seemed implausible; Duncan's proposed testimony in exchange for a deal was dubious; Swanson's unexpected testimony could have been dangerous to Defendant;[32] and what was later learned about Mayo could have either resulted in inconsistent testimony or a basis to impeach the witness. None of the arguments presented by Defendant though demonstrates a probability that the result would change if a new trial were granted or that no juror, acting reasonably, would have found him guilty beyond a reasonable doubt. As such, Defendant has also failed to meet this exception to the procedural bars.

## MOTION FOR APPOINTMENT OF COUNSEL

Superior Court Criminal Rule 61(e)(4) states that for an indigent movant's second or subsequent postconviction motion, the judge may appoint counsel for the movant only if it is determined that the motion satisfies the pleading requirements

---

[32] In Defendant's Fourth Motion he presents a claim that Swanson reached a deal with the State to resolve charges against him and this having not been disclosed at the time of trial, his rights were violated. According to the Fourth Motion, the "deal" may have been reached in 2005 or later (years after Defendant's conviction) and there is no evidence that it was tied to Defendant's case.

10

of Superior Court Criminal Rule 61(d)(2)(i) or (2)(ii). Defendant's Motion for Appointment of Counsel recognizes that many of his arguments relate back to his Second Motion but argues that counsel should be appointed as he was previously ill-equipped to present the claims himself. However, Defendant completely ignores the Third Motion and counsel's assistance throughout that matter. This is Defendant's Fourth Motion and he has already had the benefit of counsel and numerous opportunities to litigate his claims both in the state and federal courts. Furthermore, for the reasons set forth above, I do not find that Defendant has met the pleading requirements of Rule 61(d)(2)(i) or (ii). Therefore, the Motion for Appointment of Counsel should be denied.

For all of the foregoing reasons, Defendant's Motion for Postconviction Relief should be SUMMARILY DISMISSED and the Motion for Appointment of Counsel should be DENIED.

**IT IS SO RECOMMENDED.**

Commissioner Katharine L. Mayer

oc:  Prothonotary
cc:  Damone Flowers

11