# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| ESTATE OF KIRK ANDERSON, | ) |
| | ) |
| Claimant-Below, Appellant | ) C.A. No.: N22A-03-003 FJJ |
| | ) |
| | ) CITATION ON APPEAL |
| v. | ) FROM THE DECISION OF |
| | ) THE INDUSTRIAL |
| AMERICAN SEABOARD EXTERIORS, | ) ACCIDENT BOARD OF THE |
| | ) STATE OF DELAWARE |
| Employer-Below, Appellee. | ) NEW CASTLE COUNTY, |
| | ) HEARING NO. 1449333 |

Submitted: September 30, 2022
Decided: October 18, 2022

**UPON CONSIDERATION OF APPELLANT'S APPEAL OF THE
DECISION OF THE INDUSTRIAL ACCIDENT BOARD
<u>AFFIRMED.</u>**

**OPINION AND ORDER**

*Cassandra Roberts*, *Esquire*, Elzufon, Austin & Mondell, 300 Delaware Avenue, Suite 1700, P.O. Box 1630, Wilmington, Delaware, 19899

*John Ellis*, *Esquire*, Heckler & Fabizzio, 800 Delaware Avenue, Suite 200, P.O. Box 128, Wilmington, Delaware, 19899

*Theodore Segletes*, *Esquire*, Liberty Mutual, 3 Mill Road, Suite 301, Wilmington, Delaware, 19806

*David Crumplar*, *Esquire*, Jacobs & Crumplar, 750 Shipyard Drive, Suite 200, Wilmington, DE 19801

**Jones, J.**

**INTRODUCTION**

Appellant, the Estate of Mr. Kirk Anderson (the "Estate" or "Mr. Anderson"), appeals a January 31, 2022, decision of the Industrial Accident Board (the "Board" or "IAB"). In its decision, the IAB found the Estate did not meet its burden of proving Mr. Anderson's development of peritoneal mesothelioma was causally related to his employment at American Seaboard Exteriors ("Seaboard").

On appeal to this Court, the Estate presents three (3) arguments. First, it contends the IAB erred in its application of the last injurious injury rule when it determined Mr. Anderson did not suffer a last injurious injury from asbestos exposure at buildings maintained by Seaboard.[1] Second, the Estate argues the Board erred in its application of Delaware Rule of Evidence 803(6) when it did not allow the introduction of shipping records into evidence.[2] Finally, the Estate contends the Board committed reversable error in its application of Delaware Rule of Evidence 804(b)(1) by excluding the prior deposition testimony of insulators who worked in the same buildings as Mr. Anderson.[3]

The Court is satisfied the IAB applied the correct legal standards, and that substantial evidence supports its decision. To the extent the Board erred in its application of the law, the Court finds such errors to be harmless. Accordingly, the

---

[1] Appellant's Opening Brief on Appeal (hereinafter Appellant's Op. Br.) (July 20, 2022) at 2.
[2] See *Id.*
[3] *See Id.*

IAB's denial of the Estate's application for additional compensation must be **AFFIRMED**.

## FACTUAL RECORD

Seaboard employed Mr. Anderson as a window washer[4] from 1999 until 2015.[5] Although Seaboard initially limited Mr. Anderson's duties to "exterior window cleaning and maintenance,"[6] Seaboard eventually promoted him to a crew leader.[7] In that position, Mr. Anderson oversaw and performed exterior window maintenance work and protected drop zones using barricades.[8]

The parties agree the buildings serviced by Seaboard contained asbestos, namely inside the mechanical rooms and penthouses.[9] However, Seaboard's contract with the buildings it serviced was limited to exterior window cleaning.[10] The record does not indicate that Seaboard performed any work inside the mechanical rooms or penthouses.[11] Seaboard stated, and the Board agreed, that although Mr. Anderson used these rooms as "pass-throughs" to access the building roofs, Seaboard required him to walk along designated paths inside the rooms and

---

[4] *See* The Industrial Accident Board of the State of Delaware, Decision on Petition to Determine Compensation, Hearing No. 144933 (Jan. 31, 2022) (hereinafter "IAB Decision") at 48.

[5] *See id.* at 17. The IAB found that, although Mr. Anderson's employment with Seaboard commenced in 1991, the "employment at issue" spanned from 1999 to 2015.

[6] *Id*.

[7] *Id.*

[8] *Id.*

[9] *See id.* The buildings specifically referred to by the Estate are The Brandywine, the Nemours building, the Delaware Trust building, and the Hotel DuPont.

[10] *See id.* at 49.

[11] *See id.*

"did not [give him] access to [other] areas in the rooms."[12]  Nevertheless, Mr. Anderson argued these "pass-through" walks exposed him to friable asbestos.[13]

Mr. Anderson was diagnosed with peritoneal mesothelioma on August 5, 2016[14] and passed away as a result of the condition on January 25, 2017.[15]

## PROCEDURAL HISTORY

On November 29, 2016, Mr. Anderson filed a Petition to Determine Compensation, seeking: (1) compensation for the peritoneal mesothelioma diagnosis; (2) temporary total or partial disability benefits from August 6, 2016, through January 24, 2017; and (3) payment of funeral expenses and death benefits to Donna Anderson, the widow of Mr. Anderson.[16]  For purposes of this appeal, the central question posed to the IAB was whether Seaboard injuriously exposed Mr. Anderson to asbestos which caused his peritoneal mesothelioma.[17]

Prior to the commencement of the hearing on the merits, the Board granted two motions *in limine* filed by Seaboard.[18]  First, the Board granted Seaboard's motion to exclude shipping records which indicated that various buildings serviced by Seaboard shipped asbestos-containing material from a warehouse to a loading

---

[12] *See id.*
[13] *See id.*
[14] *See id.* at 2.
[15] *See id.*  For purposes of the Estate's claim, the "date of injury" is listed as August 11, 2016.
[16] *See id.*
[17] *See id.*
[18] *See id.* at 3.

4

dock.[19]  Next, the Board granted Seaboard's motion to preclude the presentation of numerous deposition transcripts of employees from the buildings Seaboard serviced.[20]

By stipulation of the parties, the Board held virtual hearings on the Estate's petition on June 7 and June 8, 2021.[21]  Thereafter, the IAB heard in-person arguments on August 11, 2021.[22]

At the hearings, the Estate called four witnesses: (1) Dr. Su-Jung Tsai, an industrial hygienist with specialized expertise in airborne particles and toxic chemicals;[23] (2) Dr. James Bruce, a board-certified pathologist;[24] (3) Donna Anderson, the widow of Mr. Anderson;[25] and (4) William Weikle, a former employee of Seaboard.[26]  Seaboard, for its part, called three witnesses: (1) Dr. Victor Roggli, an anatomic pathologist;[27] (2) Andy Anderson, the General Manager of Seaboard;[28] and (3) Jerry Creswald, the Vice President of Seaboard.[29]

The parties submitted closing arguments in late August, and the Estate submitted its rebuttal on September 7, 2021.[30]  The Board issued its decision denying

---

[19] *See id.*  The Court will address the merits of the exclusion below.
[20] *See id.*  The Court will address the merits of the exclusion below.
[21] *See id.* at 4.
[22] *See id.*
[23] *See id.* at 5.
[24] *See id.* at 10.
[25] *See id.* at 12.
[26] *See id.* at 14.
[27] *See id.* at 16.
[28] *See id.* at 28.
[29] *See id.* at 33.
[30] *See id.*

the Estate's claims on January 31, 2022.[31] The Estate subsequently filed the instant motion for appeal, which is now ripe for decision.

## STANDARD OF REVIEW

On appeal from the IAB, the Superior Court limits its review to determining whether the IAB's decision was free from legal error and supported by substantial evidence.[32] "Substantial evidence is that which 'a reasonable mind might accept as adequate to support a conclusion.' It is a low standard to affirm and a high standard to overturn."[33] Consequently, the Court must search the entire record to determine whether, based on all the testimony and exhibits, the Board could fairly and reasonably reach its conclusions.[34] However, the Court "does not sit as trier of fact with authority to weigh the evidence, determine questions of credibility, and make its own factual findings and conclusions."[35] It is solely within the purview of the Board to judge credibility and resolve conflicts in testimony.[36] Where substantial evidence supports the administrative decision, the Court must affirm the ruling unless it identifies an abuse of discretion or clear error of law.[37] Questions of law are reviewed *de novo*.[38]

---

[31] *See id.* at 56.
[32] *See Glanden v. Land Prep, Inc*., 918 A.2d 1098, 1100 (Del. 2007). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Oceanport Indus. v. Wilmington Stevedores*, 636 A.2d 892, 899 (Del. 1994).
[33] *Hanson v. Delaware State Public Integrity Comm'n.*, 2012 WL 3860732 at *7. (Del. Super. Aug. 30, 2012).
[34] *See Nat'l Cash Register v. Riner*, 424 A.2d 669, 674-75 (Del. 1980).
[35] *Johnson v. Chrysler Corp.*, 214 A.2d 64, 67 (Del. 1965).
[36] *See id.*
[37] *See Munyan v. Daimler Chrysler Corp.*, 909 A.2d 133, 136 (Del. 2006).
[38] *See id.*

When an employee suffers compensable injury, Delaware law requires the employer to pay for reasonable and necessary medical "services, medicine, and supplies" causally connected with that injury.[39] The employee seeking compensation bears the burden of proving, by a preponderance of the evidence, that a work-related accident caused the injury.[40] If medical evidence is in conflict, the IAB is the finder of fact and must resolve that dispute.[41] In resolving the conflict, the Board is "free to choose between conflicting medical expert opinions, which will constitute substantial evidence for purposes of appeal."[42]

Lastly, the Court reviews the Board's decisions to admit or exclude evidence at the hearing under an abuse of discretion standard.[43] The Delaware Supreme Court has held the IAB commits an abuse of discretion when the Board exceeds the bounds of reason in view of the circumstances and has ignored recognize rules of law or practice to as to produce injustice.[44] If the Board abused its discretion, the role of this Court is to determine whether the error rises to the level of significant prejudice which would entitle the appellant to a reversal.[45]

---

[39] 19 *Del. C.* § 2322.
[40] *See Coicuria v. Kauffman's Furniture*, 1997 WL 817889 at *2 (Del. Super. Oct. 30, 1997), *aff'd*, 706 A.2d 26 (Del. 1998).
[41] *See Munyan*, 909 A.2d at 136.
[42] *See Glanden*, 918 A.2d at 1102 (internal citations omitted). *See also Reese v. Home Budget Center*, 619 A.2d 907, 910 (Del. 1992).
[43] *See Hellstern v. Culinary Services Group*, 2019 WL 460309 at *3 (Del. Super. Jan. 31, 2019); *see also Breeding v. Advanced Auto Parts*, 2014 WL 607323 at *3 (Jan. 27, 2014).
[44] *See Hellstern* at *3 (citing *Harper v. State*, 970 A.2d 199, 201 (Del. 2009)).
[45] *See id.*

## ANALYSIS

In support of its appeal, the Estate submits three arguments. The Court will take each in turn.

### A. The Board's Exclusion of the Shipping Records

This Court has made clear that the rulings of administrative boards "cannot rest alone upon hearsay."[46] Although the Board has great discretion to consider the admission of hearsay evidence, the proffering party must provide "sworn testimony from a witness capable of providing the proper foundation [for the evidence]."[47] If the Board admits hearsay evidence without an accompanying sworn statement as to its authenticity, the Board itself is abusing its discretion.[48]

In the present matter, the Court is satisfied that the IAB's decision to exclude the shipping records did not constitute an abuse of discretion. The shipping records presented by the Estate indicated that asbestos-containing material was transported from a warehouse to a loading dock.[49] However, as the Board concluded, the records did not show that Seaboard received the asbestos-containing material, nor did they identify the products or explain where they would be located.[50]

---

[46] *Mullin v. W.L. Gore & Associates*, 2004 WL 1965789 at *1 (Del. Super. Aug. 30, 2004).
[47] *Id.*
[48] *See id.*
[49] *See* IAB Decision at 3.
[50] *See id.*

8

Irrelevance notwithstanding, the Estate failed to provide any evidence to support the authenticity of the shipping records.[51] The Estate's suggestion that the documents are self-authenticating is incorrect, and it failed to lay the proper foundation required for record admission. Resultantly, the Board properly concluded the Estate failed to authenticate the shipping records and did not abuse its discretion in excluding the documents.[52]

## B. The Board's Exclusion of the Deposition Transcripts

Next, the Court looks to the Board's exclusion of the Estate's proposed deposition transcripts. As discussed, the Board granted Seaboard's motion *in limine* to exclude the deposition testimony of Robert Ryan ("Ryan"), David Perrine ("Perrine"), Robert Ferris ("Ferris"), and Richard Zimny ("Zimny").[53] Each of these deponents were employed as insulators in buildings where Mr. Anderson worked throughout the 1990s.[54] According to the Estate, their deposition testimony would have demonstrated the use of friable asbestos in the buildings and the IAB's decision to exclude them constituted legal error.[55]

Specifically, the Estate submits the Board misapplied Delaware Rule of Evidence 804(b)(1) in excluding the deposition transcripts. The Court agrees.

---

[51] *See id.*
[52] *See id.*
[53] *See* Appellant's Op. Br. at 16.
[54] *See id.*
[55] *See id.*

Pursuant to Rule 804(b)(1), if a declarant is unavailable as a witness, then the declarant's prior testimony is admissible if it was:

> Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.[56]

Because the parties stipulated the deposed witnesses were unavailable,[57] the admissibility of the transcripts turns on whether the IAB properly concluded the "[d]efendants in the many asbestos suits in which these witnesses testified" did not have a similar motive to examine the deponents.[58]

Seaboard argues its interest is different from that of the asbestos defendants which came before it. However, as Justice Blackmun concurred in *United States v. Salerno*:

> Because 'similar motive' does not mean 'identical motive,' the similar-motive inquiry . . . is inherently a factual inquiry, depending in part on the similarity of the underlying issues and on the context of the . . . questioning.[59]

---

[56] DRE 804(b)(1).

[57] *See* Appellee's Opening Brief on Appeal (September 13, 2022) at 19. Mr. Zimny, Mr. Perrine, and Mr. Ferris are now deceased, and Mr. Ryan is partially blind.

[58] *See id.* at 21.

[59] *United States v. Salerno*, 505 U.S. 317, 326, 112 S. Ct. 2503, 2509, 120 L. Ed. 2d 255 (1992).

A factual inquiry into the transcripts encourages the Court to approve the Estate's position. As the Estate notes, the prior asbestos defendants who deposed Ryan, Perrine, Ferris, and Zimny shared Seaboard's goal in shifting the blame for asbestos exposure to another party or proving the prior claimants were not exposed to asbestos altogether.[60] This reason alone convinces the Court that the ultimate goal of both parties was to shield themselves from liability. Testimony from unavailable predecessors in interest, as here, is admissible under Rule 804(b)(1).

However, the Court is persuaded the Board's error in excluding the testimony does not require reversal. The central disagreement on appeal is not whether asbestos was present in the buildings where Mr. Anderson worked; as noted *supra*, Seaboard concedes this fact. Rather, the dispute is whether Mr. Anderson was *exposed* to the asbestos.

Here, the excluded deposition testimony does not specify where Mr. Anderson worked within the buildings, nor does it address whether Mr. Anderson was injuriously exposed while working for Seaboard. In fact, *not one* of the four deponents speaks to whether friable asbestos existed in the specific locations where Mr. Anderson was present. The transcripts do not mention Mr. Anderson's specific exposure; rather, they only state asbestos was present in the building. Therefore, the

---

[60] *See* Appellant's Op. Br. at 17.

11

Court finds the Board's refusal to admit the testimony into evidence constitutes harmless error.

### C. The Last Injurious Exposure Rule and the Weight of the Evidence

Finally, the Estate contends the Board did not support its decision with substantial evidence.[61]  Specifically, the Estate maintains "the great weight of evidence" reveals two facts: (1) Seaboard injuriously exposed Mr. Anderson to asbestos pursuant to the last injurious exposure rule; and (2) the Board misapplied the last injurious exposure rule in its analysis of the case.[62]

The last injurious exposure rule is well-settled Delaware law.[63]  In brief, the Delaware Supreme Court adopted the last injurious exposure rule to compensate employees "who were exposed to a disease-causing substance in the course of [their] employment."[64]  For purposes of the rule, the employer at "the date of the last *exposure* to a disease-causing element resulting in manifestation of injury" is responsible for providing workmen's compensation benefits to the injured employee.[65]  Therefore, as the name suggests, Seaboard must have *injuriously exposed* Mr. Anderson to a disease-causing element for the rule to apply.[66]

---

[61] *See* Appellant's Op. Br. at 3.
[62] *Id.*
[63] *See State Through Pennsylvania Mfrs. Ass'n. Ins. Co. v. Dunlop*, 1991 WL 236974, at *2 (Del. Super. Oct. 16, 1991).
[64] *Id.*
[65] *See Champlain Cable Corp. v. Employers Mut. Liability. Ins. Co. of Wisconsin*, 479 A.2d 835, 842-43 (Del. 1984) (emphasis added).
[66] *See Rhodes v. Diamond State Port Corp.*, 2 A.3d 75 (Del. 2010) (affirming IAB's denial of relief to claimant who failed to demonstrate workplace injurious exposure under the injurious exposure rule).

All told, the Estate presented the Board with a rather simple three-step roadmap: (1) Mr. Anderson contracted mesothelioma; (2) the only known cause of mesothelioma is asbestos exposure; and, thereby, (3) the only place where Mr. Anderson could have been exposed to asbestos was at the buildings he cleaned through his work with Seaboard. According to the Estate, the Board erred in failing to reach the same conclusion.

However, the petitioner[67] carries the burden of proving the contraction of a disease was work-related.[68] The Estate's simplistic approach fails to meet this burden. Indeed, as the Delaware Supreme Court has held, an employer has no duty to establish the petitioner's injury resulted from a cause other than the one alleged by the claimant.[69]

The IAB found an injurious exposure did not occur. At the hearing, the evidence revealed Mr. Anderson worked as a "ground man" for Seaboard, where he oversaw window cleaning, power washing, and other work of that nature.[70] In this position, Mr. Anderson worked primarily, if not exclusively, outside.[71] He did not dust or clean in the "pass through" mechanical rooms, and there were no beams or pipes wrapped with asbestos near the walkways he used.[72] Based on this evidence,

---

[67] *See* 29 Del. C. § 10125.
[68] *See Est. of Fawcett v. Verizon Delaware, Inc.*, 2007 WL 2142849 at *5 (Del. Super. July 25, 2007).
[69] *See Strawbridge & Clothier v. Campbell*, 492 A.2d 853 (Del. 1985).
[70] TR 6/8 at 135-37.
[71] *Id.*
[72] TR 6/7 at 221; TR 6/8 at 176; TR 8/11 at 126.

the Board concluded Seaboard did not injuriously expose Mr. Anderson to asbestos.[73]

At the outset, the Board rejected the Estate's claim that Mr. Anderson was a "maintenance worker" in the buildings he serviced. Instead, the Board considered the work Mr. Anderson performed in his capacity as a window washer and accepted Dr. Roggli's view that Mr. Anderson was not employed in a position that posed a high risk to asbestos exposure.

Further, the IAB rejected the opinions of Dr. Tsai and found her conclusions to be based on the "faulty premise" that Mr. Anderson was a "maintenance worker [who] worked on and around friable asbestos when dusting and cleaning asbestos-containing pipes."[74] The Board subsequently discarded the opinion of Dr. Bruce, as he tied his opinion to the conclusions reached in Dr. Tsai's report.[75]

Instead, the Board adopted the opinion of Mr. Silverstein, the only expert produced at the hearing who had conducted physical site inspections of the buildings at issue.[76] Mr. Silverstein noted there were no sources of friable asbestos in the buildings, nor were there pipes near the walkways Mr. Anderson used.[77] Indeed, the

---

[73] *See* IAB Decision at 49. "…the Board finds [Mr. Anderson] did not do work inside the mechanical rooms and penthouse…".
[74] *See* IAB Decision at 47-50.
[75] *See id.* at 47.
[76] *See id.* at 48.
[77] TR 8/11 at 24-27.

Board noted "Mr. Silverstein's testimony tipped the scales in [Seaboard]'s favor even more."[78]

Testimonial evidence necessarily implicates an inquiry by the fact finder into the credibility of the witnesses testifying before it. The IAB is in the best position to make and answer that inquiry. Here, the Board analyzed the evidence and chose to adopt the opinions of the experts produced by Seaboard over the experts produced by the Estate. It is the right of the Board to make such a choice, and the Court will affirm so long as substantial evidence supports the decision.[79] In this case, it does.

## CONCLUSION

Based on the foregoing, the Court finds the record in this case provides substantial evidence for the findings of fact contained in the Board's January 2022 decision and is absent of any errors of law. The IAB's decision is therefore **AFFIRMED**.

**IT IS SO ORDERED.**

/s/ Francis J. Jones, Jr.
Francis J. Jones, Jr., Judge

/jb
*via File N' Serve Xpress*

---

[78] *See* IAB Decision at 48.
[79] *See Bolden v. Kraft Foods*, C.A. No. 04A-12-002, No. 363, 2005, at 8 (Del. Dec. 21, 2005).

15