# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

PAUL RABINOVITCH, )
)
   Appellant, )
) C.A. No. N24A-02-004 KMM
  v. )
)
STATEWIDE EMPLOYEE BENEFITS )
COMMITTEE (SEBC),[1] )
)
   Appellee. )

Date submitted: August 1, 2024
Date decided: October 2, 2024

On Appeal from the State Employee Benefits Committee: **AFFIRMED**

## MEMORANDUM OPINION AND ORDER

Paul Rabinovitch, Townsend, DE, *Appellant*.

Michelle E. Whalen, Esquire, Delaware Department of Justice, Wilmington, DE, *Attorney for Appellee State Employee Benefits Committee*.

**Miller, J.**

---

[1] The caption misidentifies the appellee. The name of the committee is the State Employee Benefits Committee. *See* 29 *Del. C.* § 9602.

# I. *Introduction*

Appellant Paul Rabinovitch ("Rabinovitch"), a now-former employee of the Appoquinimink School District, filed a claim for Short Term Disability benefits due to several mental health conditions. The Hartford, the State's disability insurance carrier, denied his application because the medical records and treating providers' reports did not support a disability finding. Specifically, the records did not explain how Rabinovitch's conditions rendered him unable to work. Rabinovitch's subsequent appeals, Level I and Level II, upheld the denial of benefits. His Level III appeal, to the State Employee Benefits Committee ("SEBC"), was denied because Rabinovitch failed to meet the definition of "Total Disability" under the State's Short Term Disability Program, as the medical records did not establish that he was unable to perform the essential duties of his occupation.

Because the SEBC did not commit legal error and its findings are supported by substantial evidence, the SEBC's decision is AFFIRMED.

## II. *Factual and Procedural Background*

### A. *Rabinovitch's treatment and reduced work schedule*

Until June 2023, Rabinovitch worked for Appoquinimink School District and at the time he filed the Short Term Disability claim, he was employed as the Supervisor of Research, Assessment and Accountability.[2] His job responsibilities

---

[2] R000433.

included conducting research on district-related data impacting strategic planning (*e.g.,* student demographics, teacher data, and performance measures) and preparing annual reports. He also was the primary liaison to the Department of Education regarding testing matters; worked with the Curriculum Director and the Director of Special Education in preparing a Consolidated Grant; facilitated the Comprehensive School Review process; collected data and reported findings on the teacher evaluation system; worked with colleges and universities to report on programs and information regarding student college-readiness; and supervised and evaluated key employees responsible for District data, analysis, and reporting.[3]

Although its genesis is unclear, sometime in March 2020, Rabinovitch experienced a traumatic event, which resulted in diagnoses of Post Traumatic Stress Disorder ("PTSD"), General Anxiety Disorder ("GAD"), and Major Depressive Disorder ("MDD").[4] He received treatment from Psychiatric Mental Health Nurse Practitioner, Jacqueline Armstrong ("NP Armstrong"), and psychologist, Ashley Lo Sapio, Ph.D. ("Dr. Lo Sapio").

Due to an exacerbation of his symptoms in 2022, NP Armstrong recommended that Rabinovitch reduce his work schedule. On June 14, 2022, NP Armstrong completed a State of Delaware Family Medical Leave Act ("FMLA")

---

[3] R000178-79; R000359.
[4] *See* R000101; R000368-71.

form on his behalf.[5]  NP Armstrong noted that Rabinovitch was "experiencing an exacerbation of anxiety, … [e]xcessive worrying[,] and sleep difficulty" and that he reported "memory difficulties, [and] feelings of hopelessness [and] depression."[6] She recommended Rabinovitch reduce his work schedule to three ten-hours days per week from June 20, 2022, through August 29, 2022[7] because he was unable to perform "[a]ll job functions."[8]  He was treating with NP Armstrong every 1-2 months for one hour.[9]

On August 8, 2022, NP Armstrong recommendation that Rabinovitch further reduce his work schedule to one ten-hour day per week until August 25, 2022.[10]  On August 29, 2022, she permitted him to gradually increase his hours and noted that his PTSD symptoms decreased in frequency or intensity.[11]

On September 14, and October 3, 2022, NP Armstrong completed FMLA forms describing Rabinovitch's need for leave as an "[e]xacerbation of symptoms" and limiting his work schedule to 22.5 hours and 30 hours per week, respectively.[12]

---

[5] R000362-366.
[6] R000363.
[7] R000364.  It appears that in the summer months, Rabinovitch's work schedule consisted of four 10-hour days.  R000082.
[8] R000363-64.
[9] R000364.  NP Armstrong also prescribed and monitored his medications.
[10] R000082.
[11] R000153.
[12] R000375-378; R000381-384.

While he experienced an increase in anxiety and PTSD symptoms in late September, by late October, Rabinovitch's symptoms were decreasing.[13] NP Armstrong prescribed Wellbutrin and Trazodone.[14]

From early December 2022 through March 14, 2023, NP Armstrong completed additional FMLA forms, recommending that Rabinovitch work three 7.5-hour days per week.[15] She described Rabinovitch's inability to work as "[a]ll job functions" which was caused by an "exacerbation of symptoms."[16]

At his December 22, 2022 visit,[17] Rabinovitch reported symptoms of inattention for the first time. To rule out attention-deficit hyperactivity disorder ("ADHD"), NP Armstrong prescribed Focalin,[18] which she later noted did not help his symptoms.[19]

Rabinovitch attended weekly psychotherapy sessions with Dr. Lo Sapio. On December 16, 2022, she completed a Mental Health Attending Physician's Statement form for The Hartford, and provided the corresponding progress note.[20]

---

[13] R000141, R000144.
[14] R000146, R000142, R000149.
[15] R000393-394, R000404, R000410, R000416.
[16] R000391-418.
[17] R000114.
[18] R000115.
[19] R000137.
[20] R000097-103. On January 26, 2024, Rabinovitch emailed the SEBC hearing officer, among others, a January 24, 2024, note from Dr. Lo Sapio. *See* R000493-494. Because this document was not part of the record below and was submitted after the SEBC's decision, the Court cannot consider it.

Dr. Lo Sapio diagnosed Rabinovitch with PTSD, MDD and anxiety.[21] His symptoms included impaired attention, concentration and memory, distractibility, difficulty concentrating, preoccupation with life stressors, and sleep disturbances. Dr. Lo Sapio opined that Rabinovitch's "concentration & attention issues" (which were being measured by "self report[ing]") prevented him from performing his job responsibilities on a full-time basis.[22] She recommended limiting his work schedule to 3 days per week.[23] Lo Sapio further opined that Rabinovitch could work full-time in a less demanding position.[24]

Rabinovitch followed his treatment providers' recommendations and took FMLA leave. During the summer 4-day work week schedule, he was on leave two of the four days and starting in September 2022, he was on leave for two of five-day work week schedule.[25] During his leave, Rabinovitch used accrued sick days, thus, he had no reduction in wages.[26]

Rabinovitch retired on June 1, 2023.[27]

---

[21] R000101.
[22] R000100.
[23] *Id.*
[24] R000100-102.
[25] R000082.
[26] *See* R000129-133.
[27] *See* R000361.

**B.** *The Initial Claim and Level I Appeal*

Rabinovitch applied for Short Term Disability benefits from The Hartford on November 30, 2022,[28] for the period beginning July 14, 2022 based on his PTSD, GAD, and MDD diagnoses and his treatment providers' recommendations.[29] The Hartford denied the claim on February 9, 2023, finding that the clinical records did not support his claim.[30]

Rabinovitch requested a Level I appeal.[31] In his appeal letter, Rabinovitch also reported symptoms of nerve inflammation, blurry vision, uncontrollable weight loss, dizziness, tremors, cognitive impairment, insomnia, and weakened immune system resulting in shingles outbreaks.[32] He reported that an MRI ruled out Parkinson's disease as a cause for his tremors, but found that the tremors were due to his medical condition and medications.[33]

In addition to reviewing the records submitted by Rabinovitch's treatment providers, The Hartford engaged Dr. Rachel Maree, a board-certified psychiatrist,[34] to conduct an independent medical records review.[35] Dr. Maree noted Rabinovitch's diagnoses and the treating providers' recommended work restrictions. However, in

---

[28] R000001.
[29] R000029.
[30] R000065.
[31] R000069.
[32] *See* R000243-45.
[33] *Id.*
[34] R000083; R000207-211.
[35] R000211. Dr. Maree also spoke with NP Armstrong. R000209.

Dr. Maree's opinion, the severity of Rabinovitch's symptoms and the level of treatment he received, did not correlate to a need for a reduced work schedule.[36] While she noted his "symptoms of mood, anxiety and PTSD," the severity of the reported symptoms was not consistent with the level of treatment he received.[37] Dr. Maree submitted to The Hartford a written report of her findings and opinions.[38]

After receiving Dr. Maree's report, Dr. Lo Sapio provided written comments.[39] Dr. Lo Sapio maintained her opinion "that Mr. Rabinovitch's anxiety and symptoms of PTSD (I.e., [sic] hypervigilance, avoidance of triggering people and places, disruption of normal sleep patterns) are hindering his ability to work full time."[40] She believed that "until [Rabinovitch's] life stressors are resolved, Mr. Rabinovitch should continue working on a part time basis."[41] Finally, she reported that Rabinovitch continued attending weekly therapy sessions.[42]

Dr. Maree prepared an addendum report on April 4, 2023,[43] addressing Dr. Lo Sapio's comments. Dr. Maree continued to believe that the treatment providers' recommended work restrictions were not consistent with the level of care Rabinovitch received (weekly visits with Dr. Lo Sapio and visits once or twice a

---

[36] R000210.
[37] *Id.*
[38] R000207-211.
[39] R000214.
[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] R000217.

month with NP Armstrong). Rather, in Dr. Maree's opinion, symptoms sufficiently severe to require a higher level of care (such as Intensive Outpatient Program or Partial Hospitalization Program) would indicate a need for a reduced work schedule.[44] Rabinovitch received no such care. Dr. Maree noted that while Dr. Lo Sapio indicated a need for a reduced work schedule, she did "not outline how [Rabinovitch's] ability to work is impaired."[45] Dr. Lo Sapio's comments did not change Dr. Maree's opinions.

The Harford conducted a further internal review, performed by Dr. Lacroix. He also found that the medical evidence did not support a finding that Rabinovitch's symptoms were severe enough to be disabling. Dr. Lacroix noted that Rabinovitch's treatment providers were not recommending a higher level of care, which would be indicative of disability symptoms.[46]

Finally, The Hartford requested and received Rabinovitch's payroll records reflecting his gross and net pay per pay period.[47]

The Hartford affirmed the denial of Rabinovitch's claim on April 6, 2023.[48] The denial letter outlined the terms of coverage under the State of Delaware Short

---

[44] R000218-R000219.
[45] *Id.*
[46] R000244. It appears that Dr. Lacroix provided a verbal report to the adjuster.
[47] R000081, R000227-41.
[48] R000243-45.

Term Disability Plan ("Plan"), which provides benefits for a Disability.[49] Applicable here, the Plan defines "Residual Disability" as meaning that the claimant was

> prevented by: … … 2. Sickness; [or] 3. Mental Condition; … from performing some, but not all, of the essential duties of your or any occupation, and as a result, your Current Weekly Earnings are 20% or more, but no more than 80% of Your pre-disability Weekly Earnings.[50]

The Plan defined "Total Disability" as meaning that the claimant was

> prevented by: … 2. Sickness; [or] 3. Mental Condition; … from performing the Essential Duties of Your Occupation, and as a result, You are earning 20% or less of Your Predisability Earnings.[51]

The Hartford stated that the medical records did not support that Rabinovitch was "Totally or Residually Disabled [as defined in the Plan] throughout the 30 day Elimination Period and beyond."[52] While The Hartford was not disputing that Rabinovitch suffered from mental health conditions/symptoms, his treatment providers did not state how those conditions/symptoms rendered him unable to perform the duties of his occupation.[53] Specifically, The Hartford found that Rabinovitch's "medical conditions and/or symptoms were [not] of the severity to preclude [him] from performing the duties of Your Occupation"[54] and that it was

---

[49] R000243.
[50] R000243-44.
[51] R000244.
[52] R000243.
[53] R000245.
[54] *Id.*

10

"not sufficient for an attending physician to issue restrictions without corroborating medical evidence or merely list symptoms or a diagnosis as though it inherently implies a certain level of functional impairment."[55]

Finally, The Hartford noted that while Rabinovitch mentioned additional symptoms of recurrent shingles and side effects of medication in his appeal letter, he did not provide any medical evidence that these conditions required a restriction on his work schedule and that self-reporting symptoms was insufficient.[56]

## C. *The Level II Appeal*

Rabinovitch filed a Level II appeal with the Statewide Benefits Office ("SBO") on April 25, 2023.[57] The SBO's review included Rabinovitch's medical records, the records previously relied upon by The Hartford, the attending physician statements from Dr. Lo Sapio and NP Armstrong, and Dr. Maree's reports.[58] The SBO Human Resources Manager also interviewed Rabinovitch by telephone on August 15, 2023.[59]

On August 18, 2023, the SBO concluded that Rabinovitch did not satisfy the Plan's definition of Total Disability and concurred in The Hartford's denial of the claim.[60] In its denial letter, the SBO again reviewed the Plan's definition of "Total

---

[55] R000245.
[56] R000244.
[57] R000352.
[58] R000432-35.
[59] R000432.
[60] *Id.*

Disability" and noted that the referenced "Your Occupation" in the definition did not "mean the specific job [Rabinovitch had been] performing for [his] specific employer or at [his] specific location"[61] but rather, the general workplace.[62]

### D.   *The Level III Appeal*

Rabinovitch filed a Level III appeal to the SEBC on September 8, 2023.[63] The SEBC appointed Faith Rentz, Director of the Statewide Benefits Office, as the hearing officer. Ms. Rentz conducted a 60-minute hearing on September 26, 2023, at which Rabinovitch was the only witness.[64] Rabinovitch relied on the record below, although he later supplemented the record with two notes from NP Armstrong, dated October 18, 2023, and November 2, 2023.[65] In these notes, NP Armstrong confirmed Rabinovitch's diagnoses of insomnia, GAD, MDD, and PTSD, and "recommended that he have intermittent FMLA from July 2022 to May 2023.[66] This request was made due to his mental health status given repeated exposures to triggers exacerbating his complex [PTSD]."[67]

---

[61] *Id.*
[62] *Id.*
[63] R000436-437.
[64] R000440-R000452.
[65] R000436.
[66] R000464.
[67] R000464; *see also* R000463-466.

12

The SEBC considered Rabinovitch's Level III appeal during its November 20, 2023[68] meeting, at which Ms. Rentz read her report.[69] Ms. Rentz recommended that the SEBC uphold the denial of Rabinovitch's claim because he did not meet the Plan's definition of Total Disability. Rabinovitch did not meet the definition of Total Disability because he was not prevented from performing the essential duties of his occupation and, as a result, did not earn less than 20% of Predisability Earnings. Indeed, Rabinovitch continued to work an average of 3 to 4 days per week from July 2022 through May 2023 and his payroll records indicated no reduction in wages as accrued sick leave was applied to his FMLA time.[70]

In its December 26, 2023 decision,[71] the SEBC made several findings of fact, including a detailed description of Rabinovitch's job responsibilities as the Supervisor of Research, Assessment and Accountability for Appoquinimink School District and that:

- Rabinovitch was approved for intermittent FMLA, effective July 14, 2022, and NP Armstrong's records indicated that his condition started on March 4, 2020, with symptoms that included exacerbation of anxiety with memory difficulties, feelings of hopelessness and depression, excessive worrying, and sleep difficulty.

- Rabinovitch's condition was "chronic," for which he received one-hour treatment sessions every one to two months.

---

[68] The SEBC decision erroneously indicated the hearing occurred on September 8, 2023. *See* R000486. The record indicates that the hearing did in fact occur on November 20, 2023, and the SEBC hearing agenda confirms this as well. *See* R000469.
[69] R000477-R000479.
[70] R000479.
[71] R000485-R000490.

- NP Armstrong felt that Rabinovitch was unable to perform "all job functions at this time" and recommended a reduced work schedule from August 10, 2022, to August 25, 2022.

- NP Armstrong reported Rabinovitch experienced sleep disturbance and symptoms of hypervigilance, and scored moderate on the PTSD screening.

- "There were *no details* provided regarding [Rabinovitch's] inability to work or *perform essential functions of the job*."[72]

- Dr. Maree concluded that the severity of Rabinovitch's symptoms and intensity of treatment did not indicate a need for restrictions on his work schedule, nor did the medical records support such a need. Dr. Maree's conclusion was supported by the fact that Rabinovitch was not referred for higher levels of care and his treatment providers did not outline how his ability to work was impaired.

- Rabinovitch worked an average of three to four days per week from July 2022 through May 2023, while receiving full-time wages as accrued sick leave as applied in lieu of any lost wages.

- There was no medical support for his claim that recurrent shingles and other side effects of medications resulted in physical restrictions.

The SEBC concluded that the medical records did not support that Rabinovitch was Totally Disabled, as that term is defined in the Plan. The SEBC relied on Ms. Rentz's opinion that Rabinovitch was not prevented from performing the essential duties of his occupation and Rabinovitch submitted no evidence to the contrary.[73] Therefore, the SEBC upheld the denial of Short Term Disability benefits.

---

[72] R000488 (emphasis added).
[73] R000489.

14

Rabinovitch timely appealed the SEBC's decision to this Court, pursuant to 29 *Del. C.* § 5258.

### III. *The parties' contentions*

Rabinovitch contends that the SEBC violated the Americans with Disabilities Act ("ADA") by denying his short-term disability claim. He further argues that his due process rights were violated when he was precluded from participating in the SEBC's meeting.[74]

Finally, Rabinovitch argues that the SEBC failed to recognize the extremely complex nature of his job duties as Supervisor of Research, Assessment and Accountability and the impact of his PTSD on his ability to perform those duties.[75] He goes on to describe medical conditions and medical treatments, which are not reflected in the medical records.[76] Rabinovitch details how his ability to function was impaired, including his ability to understand, remember, and apply information.[77] His ability to concentrate, complete tasks in a timely manner, interact

---

[74] Rabinovitch failed to file a reply brief by the set deadline. After receiving a notice of delinquency, he submitted a substantive email. The Court deemed the email to be Rabinovitch's reply brief.

[75] Rabinovitch asserts that the SEBC's failure to understand the requirements of his job was due to Ms. Rentz's withholding or manipulating information. D.I. 22, pp. 4-5. Allegedly, Ms. Rentz was politically motived to retaliate against Rabinovitch, for unclear reasons. Rabinovitch also suggests that the denial of his claim has something to do with an unidentified civil action. *Id.* Because Rabinovitch offers no evidence in support of these claims, the Court rejects them.

[76] D.I. 22, p. 2.

[77] *Id.*, pp. 6-7.

15

with others, and ability to manage others, he asserts, were negatively impacted by his PTSD, which started May 29, 2022.[78]

The SEBC counters that there is substantial evidence supporting its finding that Rabinovitch failed to satisfy the requirements of the Plan for Short Term Disability benefits and its decision is otherwise free from legal error. The SEBC further argues that the ADA has no application here and, in any event, the SEBC did not deny Rabinovitch due process because he was afforded a full opportunity to present his appeal.

## IV. *Standard of Review*

This Court's review of the SEBC's decision is on the record.[79] The Court's function is limited to an examination of the record for errors of law and determining whether substantial evidence exists to support the SEBC's findings. Substantial evidence (more than a scintilla and less than a preponderance) is relevant evidence that a reasonable mind would be willing to accept as adequate in supporting a conclusion.[80] Therefore, in the absence of an error of law and where substantial evidence supports the SEBC's findings, its decision must be affirmed.[81]

---

[78] *Id.*, pp. 2, 6-9.
[79] 29 *Del. C.* § 5258(6); 19 *Del. Admin. C.* § 2007-11.5. *See also Mossinger v. State*, 2015 WL 2379079, at *4 (Del. Super. Apr. 17, 2015).
[80] *Powell v. OTAC, Inc.*, 223 A.3d 864, 871 (Del. 2019); *Munyan v. Daimler Chrysler Corp.*, 909 A.2d 133, 136 (Del. 2006).
[81] *Zayas v. State*, 273 A.3d 776, 785 (Del. 2022) (citing *Olney v. Cooch*, 425 A.2d 610 (Del. 1981)); *Munyan,* 909 A.2d 133.

16

It is solely within the SEBC's purview to weigh the evidence, assess credibility of witnesses, resolve conflicts in the evidence, and make factual findings.[82] The SEBC resolves conflicts in medical testimony as the fact-finder and the reviewing court takes "due account" of the SEBC's expertise.[83] Thus, the SEBC is free to accept one expert's testimony over another's.[84]

While legal issues are reviewed *de novo*,[85] the Court affords significant deference to the SEBC's fact and credibility determinations.[86] Absent errors of law, the SEBC's decision is reviewed for abuse of discretion.[87] Abuse of discretion occurs when a tribunal has "exceeded the bounds of reason in view of the circumstances and has ignored recognized rules of law or practice so as to produce injustice."[88] "Thus, '[t]o prevail on appeal, the appellant must show the [SEBC] committed an error of law or demonstrate the findings of the [committee] are not supported by substantial evidence' in the record."[89]

---

[82] *Zayas*, 273 A.3d at 785 (citing *Powell*, 223 A.3d 864 (Del. 2019)).
[83] *Id.* (citing *Spellman v. Christiana Care Health Servs.*, 74 A.3d 619 (Del. 2013)).
[84] *Id.*
[85] *Id.* (citing *Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892 (Del. 1994)); *Cline v. Nemours Found.*, 2023 WL 6622211, at *10 (Del. Super. Oct. 11, 2023).
[86] *Christiana Care Health Servs. v. Davis*, 127 A.3d 391, 395 (Del. 2015) (citing *Histed v. E.I. Du Pont de Nemours & Co.*, 621 A.2d 340 (Del. 1993)); *Powell*, 223 A.3d at 872. *See also* 29 *Del. C.* § 10142.
[87] *Glanden v. Land Prep, Inc.*, 918 A.2d 1098, 1100 (Del. 2007).
[88] *Harper v. State*, 970 A.2d 199, 201 (Del. 2009).
[89] *Mossinger*, 2015 WL 2379079, at *4 (quoting *Behr v. Unemployment Ins. Appeal Bd.*, 1995 WL 109026, at *1 (Feb. 7, 1995).

## V.    *Discussion*

### A.    *The ADA cannot be raised in this appeal.*

Rabinovitch argues for the first time on appeal that his PTSD is protected by the ADA and consequently, he was entitled to intermittent leave as an accommodation. Because Rabinovitch did not raise this issue below, he is barred from doing so in this appeal.[90] Accordingly, Rabinovitch has not shown he is entitled to relief under his first argument.

### B.    *The SEBC did not deny Rabinovitch due process.*

Rabinovitch argues that his due process rights were denied when his electronic connection to the November 20, 2023 SEBC hearing was terminated shortly after the meeting started and was not restored until the end of the meeting.[91]

On a Level III appeal, the SEBC may hear the appeal directly or appoint a hearing officer.[92] When a hearing officer is appointed, "the hearing officer shall decide the matter and prepare a report containing the findings of fact, and conclusions of law."[93] The SEBC then may "accept or modify the hearing officer's final report."[94]

---

[90] *See Munyan*, 909 A.2d at 136 (the reviewing court has a limited role of determining whether substantial evidence supports the board's finding and its decision is free of errors of law).
[91] D.I. 22, pp. 11-12.
[92] 29 *Del. C.* § 5258.
[93] *Id.*
[94] *Id.*

18

Here, a hearing officer was appointed. Ms. Rentz conducted an hour-long hearing, at which Rabinovitch testified. He chose to call no other witnesses. After the hearing, Ms. Rentz allowed Rabinovitch to supplement the record.

Rabinovitch had no right to present evidence at the SEBC meeting. At the meeting, Ms. Rentz read directly from her report, a copy of which was provided to Rabinovitch.[95] In accordance with the statute, the SEBC could modify or accept Ms. Rentz's report. It chose to do the latter.

Rabinovitch fully participated in his appeal and his due process rights were not denied. Accordingly, Rabinovitch has not shown he is entitled to relief under his second argument.

## C. *The SEBC's ruling is supported by substantial evidence and free from legal error.*

Short Term Disability benefits are subject to the terms of the Plan. To qualify, an employee must fall within the parameters of "Total Disability" for the 30-day elimination period.[96] Rabinovitch does not argue otherwise.

"Total Disability" is defined in the Administrative to mean:

> the employee is prevented by … mental condition … from performing the essential duties of their occupation, and as a result, the employee is earning 20% or less of his or her base rate

---

[95] *See* R000486.

[96] 29 *Del. C.* § 5253(b). *See also* 29 *Del. C.* § 5256 (the SEBC is authorized to adopt rules and regulations to administer the State's disability program) and 19 *Del. Admin. C.* § 2007-2.0, 6.3 (2019) (disability insurance program rules and regulations).

of compensation received on the last day of employment before becoming disabled.[97]

"Essential Duty" is defined to mean:

a duty that is substantial, not incidental; is fundamental or inherent to the occupation; and cannot be reasonably omitted or changed. To be at work for the number of hours in the employee's regularly scheduled workweek is also an essential duty. *Any occupation means an occupation for which the employee is qualified by education, training or experience.*[98]

The employee bears the burden of showing that he meets the definition of Total Disability, which requires medical evidence demonstrating that the employee is unable to perform the Essential Duties of his occupation. "Critically, 'occupation' does not mean the specific job [an employee is] performing for a specific employer or at a specific location. In other words, an employee's occupation is the category of work []he performed, not the specific job []he was performing for [his] specific employer."[99]

There is no dispute in the record that Rabinovitch suffered from PTSD, MDD, and GAD. There is also no dispute in the record that he had great responsibilities in what was likely a stressful job. The problem for Rabinovitch is that his treating providers did not state what job functions Rabinovitch could not perform due to his

---

[97] 19 *Del. Admin. C.* § 2007-6.3 (2019).

[98] *Id.,* § 2007-2.0 (2019) (emphasis added). *See also* 29 *Del. C.* § 5253(b)(1); *Moore v. State Emp. Benefits Comm.*, 2023 WL 2808080, at *1 (Del. Super. Apr. 6, 2023), *aff'd*, 307 A.3d 979 (TABLE), 2023 WL 6997856 (Del. Oct. 23, 2023).

[99] *Moore*, 2023 WL 2808080, at *1 (quoting *Noyes v. State*, 2022 WL 1276030, at *4 (Del. Super. Apr. 28, 2022)) (cleaned up).

20

mental health conditions. The treating providers' bald statement that he was unable to perform "all functions" of his job was insufficient. The diagnoses and Rabinovitch's report of symptoms[100] on their own are also insufficient to qualify for disability benefits.

Additionally, Dr. Maree opined that Rabinovitch's level of care was not consistent with his claim of Total Disability. He treated with NP Armstrong 1-2 times a month and saw Dr. Lo Spiro once a week for an hour-ling therapy session. Had Rabinovitch's condition been severe enough to warrant a finding of Total Disability, he would have received a higher level of care, such as inpatient treatment. The SEBC is free to rely upon the opinions of one expert over another.[101] The SEBC accepted Dr. Maree's opinion, which constitutes substantial evidence.

## VI.    *Conclusion*

Rabinovitch has shown no legal error and the SEBC's ruling is supported by substantial evidence. Therefore, the SEBC's Decision is **AFFIRMED**.

**IT IS SO ORDERED**.

*/s/Kathleen M. Miller*
Judge Kathleen M. Miller

---

[100] In his appeals, Rabinovitch asserts other medical conditions, such as tremors and shingles, but these conditions are not addressed in the treatment providers' records. Rabinovitch submitted Dr. Lo Sapio's October 8, 2021 note, that references some side effects from medications, with his opening brief. Because this note was not part of the record below, the Court cannot consider it.
[101] *See, Gonzalez v. Perdue Farms, Inc.*, 2022 WL 130866, at n.81 (Del. Super. Jan. 14, 2022).